JOHN SMITH *et al.*

*v.*

JOHN T. LONG.

*Filed at Ottawa May 10, 1883.*

1. PRACTICE IN THE SUPREME COURT—*as to rulings in chancery in the admission or rejection of evidence.* In chancery cases, the practice is not to reverse for erroneous rulings in the admission or exclusion of evidence, unless it is seen, after an inspection of the entire record, that different rulings might have induced a different decree.

2. Where the entire record is before this court, embracing not only the evidence admitted, but also that excluded, unless it can see on such record that there is error in the decree below it will be affirmed.

3. WITNESS—*competency—of husband and wife, for and against each other.* Husband and wife are competent witnesses for and against each other only in the cases mentioned in the exceptions to section 5 of the act relating to evidence. The words, "except in cases where the wife would, if unmarried, be plaintiff or defendant," do not have reference to cases where the wife is subsequently divorced, or where her husband has died, but simply to cases where the proposed witness has never been married,—where the controversy does not concern a right resulting from marriage.

4. On bill by a husband and wife to set aside their contract of sale and conveyance of the husband's interest as heir in his grandfather's estate, both real and personal, on the ground of fraud, the wife is not a competent witness for her husband.

5. SAME—*attorney at law—when competent to testify as to facts.* An attorney who is merely employed to draw up the necessary papers to consummate a contract to which the parties had agreed, no legal advice being asked or required, is not privileged, and may testify as to what comes to his knowledge in connection with the transaction.

6. RESCISSION OF CONTRACT—*placing the party in statu quo—exceptions to the rule.* It is incumbent on a party seeking the rescission of an executed contract, to return, or offer to return, what he has received. He must place the opposite party in *statu quo.* There are exceptions to this rule, as, when that received is entirely worthless, or when, by reason of peculiar circumstances not chargeable to the fault of the party seeking to rescind, restoration of that received is impossible.

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. J. L. Dʀʏᴅᴇɴ, and Mr. L. B. Cᴀᴋᴇ, for the appellants:

Louise Smith, wife. of complainant John Smith, and a proper party to the suit, was a competent witness, under the first exception in section 5, chapter 51, of the Revised Statutes, "where the wife would, if unmarried, be plaintiff or defendant." The .fair construction of this clause is, if the husband were taken out of the way she should have such an interest in the subject matter of the suit as she could sue for or defend. If she was a proper party, the section referred to makes her a competent witness. *Hackett* v. *Bonhill,* 16 Wis. 496 ; *Barnes* v. *Martin,* 15 id. 264 ; *Kavanaugh* v. *Jaynesville,* 24 id. 618.

This section has removed all disqualification on the ground of interest, and rendered every proper and necessary party to the suit a competent witness. *Little* v. *Little,* 13 Gray, 264 ; *Schaffer* v. *Reuter,* 37 Barb. 44 ; *Marsh* v. *Potter,* 30 id. 506 ; *Chamberlin* v. *People,* 23 N. Y. 85.

The deposition of J. B. Johnson was improperly excluded. The employment of a scrivener or conveyancer, although an attorney, is not sufficient to exclude his testimony. He must be employed as an attorney. *De Wolf* v. *Strader,* 26 Ill. 225 ; *Hatton* v. *Robinson,* 14 Pick. 416.

There must be an employment, either with reference to some suit or judicial proceeding, existing or anticipated, (*Whiting* v. *Barney,* 30 N. Y. 330, *Berd* v. *Lovelace,* Cary's Rep. 88, *Austin* v. *Vesey,* id. 89, *Kilway* v. *Kilway,* id. 126,) or advice sought and paid for with a view to regulate the future conduct in regard to pending or expected litigation. *Thompson* v. *Kilborn,* 28 Vt. 750 ; *Alderman* v. *The People,* 4 Mich. 414.

There must be either a retainer, offer to retain, or attorney's fee paid, to consummate the relation. *De Wolf* v. *Strader,* 26 Ill. 225.

The privilege does not extend to communications made in the presence of all the parties to the suit, nor to third per-

sons in the presence of the attorney.   *Britton* v. *Lorenz*, 45
N. Y. 51; *Whiting* v. *Barney*, 30 id. 342; *Griffith* v. *Davis*,
5 B. & A. 502; *Shore* v. *Bedford*, 5 M. & G. 271; *Coveny* v.
*Tannahill*, 1 Hill, 33.

Messrs. PORTER & PORTER, and Messrs. STEWART & GRIER,
for the appellee:

The chancellor, in rendering his decree, only considers
legal and pertinent evidence, and the hearing of incompetent
evidence is no ground for reversal.   *Swift et al.* v. *Castle*, 23
Ill. 214.

Louise Smith was not a competent witness for her hus-
band.   *Mitchinson* v. *Cross*, 58 Ill. 366; *Gravel Road Co.* v.
*Madaus*, 102 id. 117.

Rejection of competent testimony is no ground of reversal,
if the record shows its admission would not have changed
the result.   *Rowley* v. *Hughes*, 40 Ill. 316; *Ryan* v. *Brant*,
42 id. 78.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was a bill in chancery to set aside a sale of the inter-
est of John Smith in the estate of his grandfather, Garland
Ray, deceased, and a deed made pursuant thereto, to John
Long, on the ground of fraud.   The circuit court, after hear-
ing the evidence, decreed that the bill be dismissed, and this
appeal is brought to reverse that decree.

Several errors are alleged in the rulings occurring during
the progress of the trial, but none of them are of controlling
importance.

"In chancery cases the practice is, not to reverse for erro-
neous rulings in the admitting or excluding of evidence, unless
it is seen, after an inspection of the entire record, that differ-
ent rulings might have induced a different decree." (*Wille-
min* v. *Dunn et al.* 93 Ill. 520.)   The entire record is before
us, embracing not only the evidence admitted, but also that

excluded, and unless we can see on this record there is error in the decree below, it must be affirmed.   *Swift et al.* v. *Castle*, 23 Ill. 209.

We incline to the opinion that the deposition of Smith's wife was properly excluded, and that of Johnson, the attorney, should have been admitted.   We have held, under the act of February 14, 1867, husband or wife are competent witnesses for or against each other, only in the cases mentioned in the exceptions to section 5 of that act.   (*Mitchinson* v. *Cross*, 58 Ill. 366; *Gravel Road Co.* v. *Madaus*, 102 id. 417.)   We do not understand the language in those exceptions, "except in cases where the wife would, if unmarried, be plaintiff or defendant," as having reference to cases where the wife has been married, but is subsequently divorced, or her husband has died, as contended by counsel for appellant, but simply to cases where she has never been married,— where the controversy does not concern a right resulting from marriage,—and it is plain this is not such a case.   Nor does it concern her separate property, in any correct sense of that term, or fall within any of the other exceptions.

With regard to the deposition of the attorney, Johnson, the evidence shows only that the firm of which he was a member were employed as scriveners to draw up the papers requisite to consummate the contract to which the parties had agreed.   There was no controversy,—both parties were present,—no litigation was anticipated, and, of course, no advice was, or could have been, sought, with reference to litigation. The facts, as mutually understood, were submitted, and the attorneys were required to draw the papers in conformity therewith, and for this service Long paid them.   *De Wolf* v. *Strader et al.* 26 Ill. 225, is directly in point.   It was there held, an attorney who is requested to prepare a deed or mortgage, no legal advice being required, is not privileged, and may testify as to what came to his knowledge in connection with such transaction.

But we think this deposition is of but little weight in what we regard as the vital issue here, and circumstances are shown in regard to the conduct of the witness in connection with this case materially impairing the respect to which his evidence would otherwise be entitled. If we add the depositions of Mrs. Smith and Johnson, both, to the evidence of appellant, we are still unable to say the preponderance is so clearly on that side that the decree below should, for that cause, be reversed. In cases of this kind it is incumbent on the party seeking a rescission, to return, or offer to return, what he has received. He must place the opposite party *in statu quo.* (*Edmunds* v. *Myers et al.* 16 Ill. 207; *Underwood* v. *West,* 52 id. 397.) There are exceptions to this rule, as, where that received is entirely worthless, or by reason of peculiar circumstances not chargeable to the fault of the party seeking rescission, restoration of that received is impossible; but none of these are applicable here, that received being money, which may always be restored.

It is alleged in the bill that Smith sold his interest in the estate for $1000,—of which $400 was for the real estate, and $600 for the personal estate,—and this amount, only, is offered to be returned. The answer denies that this is the true amount, and alleges that the price paid was $1400,— of which $400 was for the real estate, and $1000 was paid for the personal estate. Smith testifies that the amount he received was $1000, while Long as positively testifies the amount he paid Smith was $1400. Each proves declarations of the other party to sustain his side of the case.

The estate was in Warren county, in this State, and Long resided there. Smith lived at Braddyville, in Paige county, Iowa, and the trade was closed between them at Clarinda, the county seat of that county. Long left his home in Warren county on the evening of the 30th of May, 1881, arrived at Braddyville next morning, (31st of May,) agreed upon terms of purchase and sale with Smith. That afternoon he and

Smith went to Clarinda, had the papers with reference to the sale drawn, and he paid the money to Smith. He paid Smith, through a bank at Clarinda, $1000, in this way :- He had with him a letter of credit for $500, and a draft on New York for $300. The letter of credit was from the First National Bank of Monmouth, and the draft was drawn by a bank at Rose-ville, in Warren county. Smith got the cash from the bank at Clarinda, on the letter of credit and the draft; then Long made his note to Smith for $200, payable in ten days, left that in the bank at Clarinda, and it was paid by or before maturity, through the First National Bank, at Monmouth, and Smith received his money. There is no controversy what-ever that Smith was paid $1000 in this way. The dispute relates to the payment of the other $400 which Long claims to have paid. Long testifies that he paid that amount to Smith on the steps of the bank in Clarinda, before they entered the bank, no one being present. He says while the papers were being drawn he and Smith went to the bank; that the doors were temporarily closed; that they then sat down on the steps of the bank, and he counted out to Smith, from his pocket-book, four one hundred dollar bills; that then some one opened the doors of the bank, and they entered, and then the other payments alluded to before were made. Long is corroborated circumstantially, apart from proof of admis-sions of Smith that he was to receive, and had received, $1400 in this way. The cashier of the bank at Monmouth testifies, that either the day Long started to Iowa, or the day before, he gave him the letter of credit for $500, and he also then gave him four one hundred dollar bills for smaller bills. Long testifies that he took these four one hundred dollar bills with him to Iowa, and there is no evi-dence tending to show that he disposed of them before going there. The evidence shows that after Long and Smith left the bank they returned to the attorney's office. Long then paid the attorney's fees. He and Smith left the office, and

had proceeded some distance in the town, when Long discovered he had lost his pocket-book. Smith says, upon making this discovery Long asked him if he was unable to find it, if he (Smith) would loan him money enough to go home on. Long returned to the attorney's office, and Johnson handed him his pocket-book, requesting him to examine it and see if all was there, which he did, and said there was between $20 and $30. This is the evidence of both Long and Johnson.

Long testifies that the four one hundred dollar bills that he got from the bank in Monmouth were the same that he paid to Smith on the steps of the bank at Clarinda. Of course the circumstances are not conclusive, but they are strongly corroborative, there being so short a time after he got the bills until he was evidently without them, and no other transaction being shown in which he could have expended them. There is no reason to believe that Long, at that time, supposed Smith would become dissatisfied with the trade and seek to repudiate it, and hence if he had had the $400 in bills, the inference is strong that he would not have given his note for the $200. Long testifies that when he was buying tickets for Clarinda, at Crooks, which seems to be a station near Braddyville, Smith told Good, the station agent, about the sale, and that he was receiving $1400. Good fully corroborates him in this. A number of other witnesses swear to admissions of Smith that he was to receive, or had received, $1400 from Long.

It is proper to say that a number of the witnesses, on the other hand, testify that Long admitted that he had bought Smith's interest for $1000. It is not improbable that some of these witnesses may have misapprehended either what Long said, or what he meant, in this way: He says he was to pay $1000 for the personal estate only. He may have been talking of that estate, and the witnesses failed to catch the word "personal," or he may have spoken of the estate in

the hands of the administrator, and called it "the estate," and the witnesses have misapprehended the meaning. The same can not be said of the witnesses who speak of Smith's receiving $1400 from Long. There was no other transaction to which the extra $400 could; by any possibility, have reference. Undoubtedly there is some of the evidence that can not be reconciled upon any hypothesis. Somebody has committed perjury, but it is impossible for us to say that we are clearly satisfied this was by Long, and on his behalf.

The burden of making out a case was upon Smith. We are not satisfied that the court below clearly erred in holding that he had not done so.

The decree is affirmed.

*Decree affirmed.*