Isaac N. Miller

v.

Nathan B. Craig.

1.  Burden of proof—Instruction.—Where plaintiff, who had other claims against defendant, sued him as surety on a note, and defendant by his plea of payment had taken upon himself the burden of proof of showing payment of the note, an instruction which assumed that a receipt which showed that money was paid in full *on account*, the note and judgment not being mentioned, was *prima facie* evidence of the payment of the note, and that the burden of contradicting it and overcoming a *prima facie* case of payment was on plaintiff, was erroneous.

2.  Instructions—Account not in issue.—As the plaintiff was not seeking to recover on the Iowa account and it was not in issue, the eighth instruction is erroneous in assuming that it was, and drawing in question the Statute of Limitations for the purpose intended by the instruction.

3.  Evidence—Husband and wife.—In an action based upon a promissory note against the surety of the note, it is error to permit the wife of the principal of the note to testify in favor of the surety, to show payment of the note by her husband, who, though not a party, was interested in the event of the suit.

Error to the Circuit Court of Jo Daviess county; the Hon. Wm. Brown, Judge, presiding. Opinion filed February 5, 1885.

Messrs. D. & T. J. Sheean, for plaintiff in error; as to application of payments, cited Hare v. Stegall, 60 Ill. 380; Wilhelm v. Schmidt, 84 Ill. 183.

As to burden of proof: Howard v. Bennett, 72 Ill. 297; Douglas v. Pfeiffer, 46 Ill. 102; Un. Nat. Bk. v. Baldenwick, 45 Ill. 375; Watt v. Kirby, 15 Ill. 200.

Mr. M. Y. Johnson, for defendant in error.

Lacey, J. This suit was in assumpsit, commenced by the plaintiff in error against the defendant in error in the circuit court, May 5, 1880, and was based on a joint and several

promissory note, dated Council Bluffs, May 4, 1870, given by
W. R. Craig as principal, and the defendant in error as surety,
for $800, one day after date, payable to P. M. Spencer, with 10
per cent. interest from date, and indorsed by Spencer to Mil-
ler.    In March, A. D. 1881, plaintiff in error recovered judg-
ment against defendant in error for $1,666.66, which was af-
firmed in this court, May term, 1881, but reversed by the Su-
preme Court on appeal, 103 Ill. 605.    On a second trial there
was a verdict and judgment for the defendant, and the plaint-
iff now brings the case here by writ of error.    The pleas in
the case are the general issue and payments by W. R. Craig, the
principal in the note.    It appears that the plaintiff, at the time
of the alleged payment on May 3, 1880, which will be men-
tioned hereafter more particularly, had claims against the de-
fendant in error as follows:    The note in suit, the validity of
which is not disputed, and also a judgment in favor of Scott &
Miller against W. R. Craig, in Pottawatomie county, Iowa,
dated Aug. 30, 1871, for the sum of $1,975.43 and costs, of
which judgment plaintiff was the owner in May, 1870, by suc-
cession to the assets of Scott & Miller, and its validity is not
disputed; and also a book account of P. M. Spencer against
W. R. Craig, balance being $1,199.25, and assigned January
17, 1880, by Spencer to plaintiff, the validity of which is not
disputed.    The first payment which W. R. Craig made to
plaintiff was $900, May 1, 1880, sent by draft by mail inclosed
in a letter from Nebraska City, Iowa, and directed to plaintiff
in error, the draft being made payable to P. M. Spencer, the
letter not explaining where it was to be applied.    The next
payment was $1,700, and was the last, and was acknowledged
by a receipt given by plaintiff in error, as follows: " Received,
Nebraska City, May 3, 1880, of W. R. Craig, seventeen hun-
dred dollars, in full of my account against him, provided that
if more is got from the State of Iowa, then he is to pay me the
balance of my account, or its proportion of it." Signed " J.
A. Miller."    The defendant in error had a claim against the
State of Iowa for building an insane asylum, which he claimed
was not paid.    The dispute between these parties hinges on
the points whether, as is claimed by defendant in error, the

Miller v. Craig.

last payment was made upon final settlement between them of all the above claims, and whether the $900 was intended to be applied on the open account assigned by Spencer to Miller, or was a proper credit on the note, or whether the $1,700 was by mutual understanding applied on the judgment alone and the $900 on the account, as maintained by plaintiff in error, leaving the note unpaid, and that there was not a final settlement of all claims of plaintiff against defendant.

Testimony was introduced tending to support the position of each party, and was quite conflicting; but we are not called upon in the necessary decision of the case to express any opinion as to which had the greater weight or preponderance of the evidence in his favor, and therefore express none.

A number of minor points are assigned for error that we will not notice, as they can be corrected if any fault is in them, or they may not and probably will not occur on another trial. But the serious objections arise on the giving of certain instructions for the defendant in error. Before we notice them, however, we will say that we see no cause of complaint against the action of the court in modifying plaintiff's twelfth instruction or in refusing to give his thirteenth. The first was properly modified, so as to avoid telling the jury by implication · that they must find the full amount of the note against defendant. The refusal of the thirteenth could not harm plaintiff, as it instructed the jury, if they found the issues for plaintiff, they must find the full amount of the note, principal and interest. The jury did not find the issues for plaintiff, so the amount of the note was immaterial; and again, it might have been error, as the jury might have found that something had been paid to reduce the amount of the note, even if the issues were found for the plaintiff.

The plaintiff's counsel take exceptions to the giving of the defendant's second, third, seventh and eighth instructions. As to the second and third instructions, we see no serious objection, but the seventh and eighth we regard as erroneous. They are as follows:

7th.  " The court instructs the jury that a receipt in full of an account is to be taken to be in full of all accounts between

the parties at the time it was given, but it may be contradicted by parol testimony; and if plaintiff sets up that the receipt of $1,700 was given in settlement of a judgment, and not as the receipt appears upon its face, the proof is on the party so contradicting the receipt to establish by a preponderance of evidence that the payment was made on the judgment, and not as shown by the receipt; and if the jury believe from the evidence that the evidence is equally balanced on that point, whether it was paid on the judgment or as set out on the face of the receipt, then the plaintiff has failed in law to establish that fact; he holding the affirmative, that it was paid on the judgment, must prove the same by a preponderance of evidence. The receipts, and all the surrounding facts and circumstances in evidence, are to be considered by the jury in determining on the preponderance of evidence. By preponderance of evidence in law is meant the larger amount of credible evidence to prove the issue in controversy."

8th.    "The court instructs the jury that the account offered in evidence in this cause, as the same appears on its face, is barred by the Statute of Limitation under the laws of the State of Iowa, and before the party can recover on the same where the Statute of Limitation is pleaded, there must be an absolute and unconditional promise to pay the same within five years; and a promise that the debtor would pay the creditor whenever the State of Iowa would pay him, is not a promise that will revive the debt until the State of Iowa pays him."

The seventh instruction is misleading and intended to injure the plaintiff in error. The effect of it is to cast the burden of proof on the plaintiff in error, to show that the note was not paid. The defendant in error had taken the *onus* upon himself by the plea of payment. The plea of the general issue compelled the plaintiff in error to introduce the note in evidence; when that was done, a *prima facie* case was established. To establish the defense of payment, defendant in error introduced his receipt, showing that $1,700 was received by plaintiff in error in full satisfaction of his account against defendant in error, etc., etc.; but this on its face did not establish the payment of the note *prima facie*. It only showed that

money was paid in full *on account*, the note and judgment not being mentioned. In order, then, to prove payment of the note, he introduced parol evidence tending to show all the circumstances under which the money was paid, what claims were in existence, and what was said between the parties, and that all of plaintiff's claims were intended to be settled. Then he rested his case. The plaintiff in error then introduced his evidence in rebuttal, claiming that it could not have been so intended, but that the money was intended by both parties to apply on the judgment alone. The evidence was contradictory, and from it all and the surrounding circumstances, taking the receipt into account, it was a question for the jury to determine whether the claim of payment and settlement made by defendant in error had been established, the burthen of proof in the meantime remaining on the latter. There was no point in the evidence of defendant in error tending to show payment at which the defendant could have stopped, and the court have decided that he had made out a *prima facie* case. It was a question for the jury and not the court to say whether payment had been established, and after the rebuttal evidence had been introduced it was still for them to say—all the evidence considered—whether defendant in error had established the payment of the note which he by his plea had taken the burthen of doing. If the evidence were equally balanced on the question of payment, then plaintiff in error should succeed on that issue. The instruction, in assuming that the receipt was *prima facie* evidence of the payment of the note, and that the burthen of contradicting it and overcoming a *prima facie* case of payment was on plaintiff in error, was erroneous and should not have been given.

The eighth instruction was also misleading. The account mentioned in it was the one which Spencer assigned to plaintiff in error, and upon which the payment of $900, as claimed by him, was paid by W. R. Craig, and denied by defendant in error claiming that this sum was paid on the note. The plaintiff was not seeking to recover on this account at all, and it was not in issue, and the instruction is erroneous in assuming that it was, and drawing in question the Statute of Limitations for

the purpose intended by the instruction.   The only purpose or relevancy we can see that the Statute of Limitation of Iowa could be as evidence would be to show that the claim was barred and not subsisting, and that W. R. Craig would not be likely voluntarily to pay it.   Even then the testimony of Spencer— that he promised to pay it within the Statute of Limitations, and other evidence of like nature, should be considered bearing on the same point.   Besides, if it were clearly established that the claim was barred at the time the $900 and $1,700 items were paid by W. R. Craig, the defendant was still at liberty to pay it, the Statute of Limitations notwithstanding, and the only question would be, did he do so.   A debt barred by the Statute of Limitations is a good consideration either for a promise of, or payment itself.   But the instruction seemed to hold that W. R. Craig had no power to pay the account. As to the note sued on, it is not an *account*, and no plea of the Statute of Limitations had been interposed against it, and the statute of Iowa does not mention written contracts.   The instruction settled the entire controversy in favor of defendant in error as to whether the payment of $900 paid by W. R. Craig was or could be by possibility applied on this Spencer account, the instruction virtually telling the jury that it could not be, because the account was barred by the Statute of Limitations of the State of Iowa.

We notice that while the fifth of the defendant in error's instructions is not complained of, it appears to have about the same fault as the seventh referred to above, and it is more conclusive because it assumes that the receipt is conclusive proof that all the plaintiff's claims were settled, including the note by settlement of the 3d day of May, 1880, and virtually instructs the jury to find for the defendant upon the proof of a settlement and the introduction in evidence of the receipt, without any further proof as to *what* was settled in the settlement of June 3, 1880, whether the judgment alone, or whether all plaintiff's demands, including the note.

Another assignment of error is that the court permitted Mrs. Rowena Craig, wife of W. R. Craig, the principal in the note, to testify in favor of the defendant in order to show pay-

Miller v. Craig.

ment of the note by her husband, W. R. Craig, he being interested in the event of the suit. This evidence was for the benefit of the husband, for in case the recovery on the note was defeated the defendant would have no claim against W. R. Craig, for reimbursement, as he would have if recovery was had and he compelled to pay the note. Therefore this testimony was in direct interest of the witness' husband. At common law the evidence of neither W. R. Craig nor his wife would have been allowed. But our statute has rendered W. R. Craig a competent witness, but in our opinion, not his wife.

In Sec. 1, Chap. 51, R. S. 1874, it was provided "that no person shall be disqualified as a witness in a civil action, suit or proceeding, except as hereinafter stated, by reason of his or her interest in the event thereof as a party or otherwise." It seems that when we consider section five of the same statute, that the legislature understood that when the first section was adopted and without any qualifying clause, it was broad and comprehensive enough to allow a husband and wife to testify for and against each other in all cases the same as other witnesses, but in order to qualify and restrict that section, number five was adopted, which restricted them from testifying for and against each other in any case except as they were permitted by this section. It is that "no husband or wife shall, by virtue of section No. 1 of this act, be rendered competent to testify for and against each other as to any transaction or conversation occurring during the marriage" * * * "except in cases where the wife would, if unmarried, be plaintiff or defendant * * * and except in cases where the litigation shall be concerning the separate property of the wife * * * in all of which cases the husband and wife may testify for and against each other in the same manner as other parties may under the provisions of this act," etc. Hence it would seem that unless the statute in some clause in section No. 5 gives the wife the right to testify for her husband's benefit in a case like this, where he is interested, then she would have no such right. We find no such enfranchisement in the exceptions set forth in section five. But section No. 1 gives the husband the right to testify, for his own benefit in all cases, where only the objection on ac-

count of his interest could be made, and he is only prohibited by certain exceptions in the statute not affecting the questions here involved. It is true that in Gravel Road Co. v. Madaus, 102 Ill. 417, the opinion of Judge Dickey, who wrote the main opinion in the case, holds that in that case, like this, where the husband was interested, or in the judge's *opinion* was interested, in the event of the suit, though not a party, his wife was competent to testify in favor of and for the benefit of the party calling her, whose interest was the same as that of her husband; that she was competent to testify in that suit where the effect of her testimony was to benefit her husband when called by the party interested in the same way with her husband. The judge held that the statute had enfranchised her in that case but would not in a case where her husband was a party to the record, except in those cases pointed out in section five. The question presented to us here and which was presented there, as Judge Dickey held, was decided by him to have been new at that hearing in that court. The judge held that at common law the wife could not be a witness for her husband where he was a party, or where her husband had an interest in favor of the party calling her, because his interest as a party, or otherwise, disqualified him, and the law held the interest of the husband and the wife to be the same. The judge reviews the common law in regard to where the wife could and where she could not be a witness, and the policy thereof, in a learned and interesting manner, but it is not necessary to notice it here further in order to make our decision intelligible. But he decides that in this kind of a case the statute gives her the right to testify by reason of giving her husband the right, her evidence not being against public policy concerning the married relation. If this opinion had been concurred in by a majority of the court it would undoubtedly be decisive of this case, but four of the judges out of the seven—Walker, Craig, Scott and Sheldon, as we understand their dissenting opinions, repudiate the reasoning and decision of Judge Dickey on the point in question, but decided that Mrs. Harms was a competent witness on other grounds, and so we can not regard that case as authority.

Miller v. Craig.

In the later case of Smith et al. v. Long, 106 Ill. 485, the court seem inclined to construe the statute more strictly and seem not to favor the repeal and modification of the common law by implication arising from the statute. They say "we hold under the act of February 14, 1867, husband or wife are competent witnesses for or against each other only in cases mentioned in the exceptions to section five of that act," citing Mitchinson v. Cross, 58 Ill. 366, and Gravel Road Co. v. Madaus, 102 Ill. 417, seeming to sanction the dissenting opinions in the latter case. Hence we conclude that Mrs. Craig was not, under our statute, a competent witness, and that it was error in the court below to allow her to testify.

We think the court also erred in not allowing plaintiff in error to prove that W. R. Craig had paid out to his other creditors the $24,000, and to show what the *pro rata* share was on plaintiff's judgment, as Craig had testified he paid out *pro rata* as a circumstance bearing on the question of whether the payment of the $1,700 was intended to be applied on plaintiff's judgment alone. The jury could give it what weight they might think it deserved in view of all the other evidence in the case. The other objections we will not notice.

For the above reasons the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.