## HERMAN W. LINKEMANN
### *v.*
## JOHN H. KNEPPER *et al.*

*Opinion filed April 18, 1907.*

1. WITNESSES—*when a husband is a competent witness for or against wife.* A husband is competent to testify for or against his wife, where the litigation concerns the separate property of the wife, unless the wife is herself incompetent by reason of the capacity in which the opposite party sues or defends.

2. MORTGAGES—*when transaction amounts to mortgage and not a sale.* A warranty deed from one tenant in common to another will be deemed to be a mortgage, and not an absolute conveyance, where the evidence shows that the grantee paid a bank debt of the grantor to the bank, which marked the note paid and delivered it, together with the mortgage which it held as collateral security, to the grantee, who agreed with the grantor to take the rents and the profits of the land in lieu of interest and to allow the grantor five years in which to redeem; nor can such agreement be held void for alleged want of mutuality, in that the grantor was not obliged to re-pay the grantee.

3. STATUTE OF FRAUDS—*Statute of Frauds does not apply to an oral agreement evidencing a mortgage.* A deed absolute in form but intended merely as a security is in equity but a mortgage, and will be so treated and enforced notwithstanding the agreement to allow redemption rests in parol and the Statute of Frauds is interposed as a defense.

APPEAL from the Circuit Court of Madison county; the Hon. B. R. BURROUGHS, Judge, presiding.

This is an appeal from a decree of the circuit court of Madison county granting a partition of certain real estate, and other relief. The original bill was filed October 1, 1904. June 27, 1905, an amended bill was filed, upon which the cause was heard.

The real estate in controversy originally belonged to Henry Linkemann, who was the father of appellant, Herman W. Linkemann, and Mary Knepper. Henry Linkemann died in 1881 leaving a will, by which the real estate

in controversy was devised to his two children, Herman W. Linkemann and Mary Knepper, in equal parts. The land in controversy is located in Madison county, Illinois, in what is known as the American bottom, near the Mississippi river, and is described as one hundred and sixty acres off of the south side of the north fractional half of section 20, township No. 4, north, range No. 9, west of the third principal meridian. The devise was subject to a life estate of the mother of devisees, but the life estate expired by the death of the life tenant, so that Herman W. Linkemann and Mary Knepper became owners in fee, as tenants in common, long before any of the facts hereinafter stated occurred. On October 26, 1893, Mary Knepper and her husband executed a promissory note for $2150 to Henry Obermiller, payable one year after date, and to secure the same executed a mortgage on the undivided half interest of Mary Knepper in the land in question. This indebtedness was renewed from time to time until March 28, 1898. On this date Mary Knepper and her husband executed a note to the Northwestern Savings Bank of St. Louis for $2150, payable one year from date. This note was endorsed by Herman W. Linkemann, and the mortgage executed to Obermiller was taken up and placed with the bank as collateral security. This indebtedness was renewed in 1899. When the note matured, in 1900, appellant declined to consent to any further extension, and an arrangement was entered into by which appellant paid the bank the amount of its claim, which was at that time approximately $2500, and on April 6, 1900, Mary Knepper and her husband executed to appellant a warranty deed to her undivided one-half interest and delivered the same to the appellant. The bank marked the note paid, and delivered it, together with the mortgage, to appellant, who has since retained possession thereof. Appellant contends that he purchased his sister's undivided one-half interest for $2500, which he paid to the bank, and that he thereupon became and continued to be

the sole owner in fee of the premises in question. Appellees' contention is that the transaction was a loan by the appellant for the purpose of extending the time to the Kneppers for the payment of the bank's debt. Appellees contend that the agreement was that appellant would pay the bank note and take possession of the real estate, keep up the repairs and insurance, and receive all the rents and income from the land in lieu of interest on the $2500, and appellees were to have five years in which to re-pay appellant, and that the instrument executed April 6, 1900, while in form a general warranty deed, was in fact only intended as a mortgage to secure the re-payment of the $2500 advanced by appellant to the bank. After the execution of this instrument appellant went into possession and collected rents until the commencement of this suit. Appellant sold and conveyed nine and one-half acres of this land to a levee district, and received $1618.75 from the levee district for the nine and one-half acres and damages to the land not taken. Appellees admit an indebtedness to the appellant of $2500, less one-half the amount the appellant has received from the levee district, which sum they offer by their bill to pay, or so much thereof as may be found due upon an accounting.

After the filing of the original bill, and before the final hearing, Mary Knepper died, leaving John H. Knepper, her husband, Henry H. Knepper, Herman F. Knepper and Arthur Knepper her only children and heirs surviving her, who were made parties complainant by the amended bill. The court below found for the complainants, and found that the deed of April 6, 1900, was intended to be merely a mortgage security, as contended by appellees, and decreed a partition as prayed for in the bill, subject to the lien of appellant for the balance due him on the $2500 note, from which decree this appeal is prosecuted. The assignments of error question the right of complainants to a decree for partition and the other relief sought by the bill.

W. H. CLOPTON, and SPRINGER & BUCKLEY, for appellant.

TERRY & GUELTIG, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This being a chancery proceeding, questions of fact are reviewable by this court.

Appellant contends that the competent evidence does not sustain the findings of the court. It is insisted that John H. Knepper, husband of Mary Knepper, was an incompetent witness, and that with his testimony eliminated there is not a preponderance of the evidence in favor of appellees' contention. We cannot agree with appellant that John H. Knepper was an incompetent witness. This litigation concerned the separate property of the wife, and the husband is therefore clearly a competent witness under the exception to section 5 of chapter 51. (Starr & Cur. Stat. p. 1837.)

Appellant cites and relies on *Mitchell* v. *McDougall*, 62 Ill. 498, in support of his contention that Knepper was incompetent. That was a case where the husband exchanged his Illinois homestead for real estate in Missouri and took the deed in his wife's name. He and his wife were joined in a bill to rescind the contract on the ground of fraud, and it was held that the wife was not competent, since the suit in no sense concerned her separate property. The case of *Funk* v. *Eggleston*, 92 Ill. 515, also cited and relied on by appellant, is in point but is opposed to the view of appellant. It is there said: "A husband is a competent witness for or against his wife in cases where the litigation shall be concerning the separate property of the wife." The case of *Francis* v. *Roades*, 146 Ill. 635, and *Keithley* v. *Wood*, 151 id. 566, are both cases where the wife was held to be an incompetent witness in a suit by the husband concerning

property in which the wife had no interest. Neither case has any application to the question involved in the case at bar. The proposition is too well settled in this State to require extended discussion or the citation of authorities, that the husband may testify in all cases where the litigation concerns the separate property of the wife, unless the wife herself is incompetent by reason of the capacity in which the opposite party sues or defends. Among the many cases where this rule has been followed in this State the following may be cited: *McNail* v. *Ziegler,* 68 Ill. 224; *Funk* v. *Eggleston, supra; Smith* v. *Long,* 106 Ill. 485; *Eads* v. *Thompson,* 109 id. 87.

While appellant does not concede that the preponderance of the evidence sustains the decree if the testimony of the husband is to be considered, still his argument upon this point proceeds on the assumption that the husband was an incompetent witness. The appellant, John H. Knepper and Mary Knepper are the only persons who pretend to testify to the alleged agreement. The two Kneppers testify to the agreement substantially as set out in the bill. Appellant positively denies that there was any agreement by which the appellees were to have a right to redeem, or any other right or interest in the land after the execution of the deed of April 6, 1900. Appellant's testimony is very materially weakened by his admission on cross-examination. He says:

"I told her (Mary Knepper) that if ever the farm would give a good value and I could sell it I would give her part of her share.

The court: "What part?

A. "The part that was coming to her.

The court: "How much? Any specific part mentioned? Did you agree to give her all her part?

A. "Yes, sir."

Without entering into a detailed discussion of the evidence we are of the opinion that there is a clear preponderance in favor of appellees' theory of the transaction.

Appellant insists that even if there was such an agreement made, the same was void for the want of mutuality; that there was no valid obligation on the part of appellees to re-pay appellant the money he had paid the bank, and the debt to the bank having been paid, appellees were therefore absolved from all liability by reason of the bank's indebtedness, and that there was no new undertaking to pay appellant. This contention resolves itself into the same question that has just been disposed of. If the theory of appellees be adopted, then as to them the original indebtedness had not been paid but was a continuing obligation due to appellant instead of the bank. In this view, as to appellees the note and mortgage were still outstanding obligations, and appellant became the equitable, if not the legal, assignee of the security which the bank held for the original debt, and we have no doubt he was entitled to subrogation and might have foreclosed the mortgage for his own benefit.

The case of *Keithley* v. *Wood,* 151 Ill. 566, is a case in many respects like this. There Keithley held a mortgage on Wood's real estate for $566.50. After it became due Keithley advanced Wood $371 additional, making a total of $937.50. At this time Keithley took a warranty deed from Wood and canceled and delivered up to Wood the mortgage and note. Keithley agreed, however, that upon the re-payment to him of $937.50 within a specified time he would re-convey to Wood. The point was made there, as it is here, that there was no obligation on Wood's part to pay Keithley the $937.50. Wood did not execute a new note for the last sum. In disposing of this question it was said (p. 576) : "Here it is true that the $566.50 judgment held by appellant against Wood, and the mortgage previously given to secure the notes upon which judgment had been entered, were canceled; but after the execution of the warranty deed and the agreement to re-convey, was there no debt existing? While the debt assumed a new form, when

all the facts and circumstances are considered we do not think it was paid and discharged, but, on the other hand, it was enlarged by appellant advancing an additional sum, increasing the amount from $566.50 to $937.50." In the case at bar the note and mortgage were not canceled and delivered to the makers, as was done in the *Keithley case,* but appellant held the note and mortgage, and we are of the opinion they must be regarded as evidence of an outstanding indebtedness in the hands of appellant. Of course, upon appellant's theory there was no debt or mortgage but the transaction was simply a bargain and sale.

Both parties introduced evidence as to the value of the premises at the time the deed was executed and also at the time this suit was commenced, and each party claims that his contention is corroborated by the evidence respecting the value of the property. We think, upon a fair consideration of the testimony bearing upon this question, that appellees' equity in the premises was worth something at the time the deed was made, and considerably more after the improvement had been made by the levee district and by the government of the United States in rip-rapping the Mississippi river, which had a tendency to stop the erosion of the banks of the river near the land.

Appellant's contention that the Statute of Frauds presents a defense to this action cannot be sustained. "As early as in the time of Lord Nottingham it was held where a man had procured a deed from another under an agreement to give back a defeasance, but refused, that a court would afford relief and treat it as though the defeasance had been executed, notwithstanding the Statute of Frauds was pleaded." (Viner's Abridgment, 523; Browne on Frauds, sec. 441.) In *Union Mutual Life Ins. Co.* v. *White,* 106 Ill. 67, it was said (p. 73) : "It was not intended by the adoption of the statute to facilitate the perpetration of and to protect fraud, but to prevent it, and the courts have never lent themselves to assist or protect fraud, which the

statute did not sanction by its adoption. The courts will not permit the statute to be used as an engine of fraud, as its purpose was its suppression." It has often been held by this court that a deed absolute in form, if intended as a security, is in equity but a mortgage and will be treated and enforced as such, even though the agreement for redemption rests only in parol and notwithstanding the Statute of Frauds. *Scanlan* v. *Scanlan,* 134 Ill. 630; *Crane* v. *Chandler,* 190 id. 584.

Finding no error in the decree the same is affirmed.

*Decree affirmed.*