## Abraham L. Griffith v. Edith Griffith.

1. DIVORCE—*Causes—Impotency.*—To constitute natural impotency it is not required that the condition should have existed always, as from causes existing from birth, in the nature of natural infirmities. A curable malformation is not a case of impotency for which an injured husband or wife is entitled to a divorce unless the deformed party refuses to submit to a cure.

2. SAME—*Impotency from Accident.*—It is not a ground for divorce, if the impotency is caused by an accident or disease, unless it is incurable or the party refuses to submit to a cure.

3. IMPOTENCY—*When a Cause for Divorce Under the Statute.*—To be

Griffith v. Griffith.

"naturally impotent" under the statute of divorces, is to be incapable in the matter of performing coition with the other sex as nature prompts, and incurably so.

4. SAME—*Length of Time Required.*—The length of time during which the impotency shall continue, to be a cause for divorce, must be such as the court in the exercise of a sound discretion determines to be sufficient under the circumstances of each particular case.

**Memorandum.**—In Chancery. Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Bill for divorce; decree for complainant; appeal by defendant. Heard in this court at the October term, 1894. Reversed and bill dismissed. Opinion filed December 6, 1894.

APPELLANT'S BRIEF, HOLMES & SAUNDERS, ATTORNEYS.

The burden of proof is on the plaintiff to establish, both that the impotency existed at the time of marriage and that it is incurable. 1 Bishop M. & D., Sec. 332, 5th Ed.; Newell v. Newell, 9 Paige (N. Y.) 25; Devenbaugh v. Devenbaugh, 5 Paige (N. Y.) 554; Welde v. Welde, 2 Lee (Eng. Eccl. Rep.) 580.

Under the statute of Illinois (R. S., Chap. 40, Sec. 1), which provides if "either party at the time of such marriage was and continues to be naturally impotent," it is necessary to prove a natural and physical defect. Natural, according to Webster, means "according to nature," "not assumed or acquired."

The bill does not charge that the defendant is naturally impotent, the proofs do not show it, neither does the decree find that he is naturally impotent, and for these reasons, the decree is fatally defective. In cases of this description proof is required to be strict. 1 Bishop M. & D., Sec. 337 (5th Ed.); Stewart M. & D., Sec. 64; Newell v. Newell, 9 Paige (N. Y.) 25; Devenbaugh v. Devenbaugh, 5 Paige (N. Y.) 554; Welde v. Welde, 2 Lee (Eng. Eccl. Rep.) 578; Lorenz v. Lorenz, 93 Ill. 376.

The proper way to proceed is by inspection of the private parts by competent medical witnesses. Stewart M. & D., Pony Series, Sec. 66; Le Barron & Le Barron, 35 Vt. 365; Devenbaugh v. Devenbaugh, 5 Paige (N. Y.) 556; Newell v. Newell, 9 Paige (N. Y.) 25.

The procedure in the United States as to the canonical disabilities, one of which is impotency, is the same as that of the ecclesiastical courts. Stewart M. & D., Sec. 224; Bauman v. B., 18 Ark. 320; J. G. v. H. G., 33 Md. 401.

Our statute (R. S., Chap. 49, Sec. 1) declares natural impotency a ground for divorce, and this has been construed by the courts to mean a ground for nullity suits. A decree of divorce under our statute in connection with impotency means decree of nullity. Stewart M. & D., Sec. 235-237; Chase v. Chase, 55 Me. 21; J. G. v. H. G. 33 Md. 401; Bascomb v. Bascomb, 25 N. H. 267; LeBarron v. LeBarron, 35 Vt. 365; Matteson v. Matteson, 1 Strabe (S. C.) Eq. 387.

M. W. Robinson, attorney for appellee.

Mr. Justice Shepard delivered the opinion of the Court.

This was a suit for divorce brought by the wife on the ground of the impotency of the husband.

The parties were married October 23, 1893, and lived together as husband and wife until December 18th of the same year, a period of fifty-six days. The man was about twenty-nine years of age and the woman about twenty-five.

The facts disclosed by the evidence show a lamentable condition of things, and such as would naturally incline us to an affirmance of the decree in favor of the appellee, if such action would be consistent with a proper administration of the law.

The statute (Sec. 1, Ch. 40, entitled Divorce), provides, among other causes, that if "either party at the time of such marriage was and continues to be naturally impotent, * * * it shall be lawful for the injured party to obtain a divorce and dissolution of such marriage contract."

If the condition of impotency on the part of appellant does exist, it exists solely because of the degrading habit of self-abuse indulged in by him.

There is no malformation, either natural or by accident, and no disease, except such a disgusting habit may be prop-

erly called a disease, that has occasioned his impotency, if it exists.

According to the testimony of two physicians who examined the appellant, his parts of generation were of normal size, and his secretions healthy and virile, and he was capable of having an erection. The evidence in behalf of the appellee tended strongly to establish the fact that through long-continued indulgence in self-abuse by the appellant he has become so perverted in mind and body as to deprive him of the present desire and ability to perform the act of coition with his wife, although not as yet to destroy his capacity for self-pleasure and to emit normally virile semen as the result of self-manipulation.

Such was undoubtedly the conclusion that the trial court reached, and that conclusion would not, after a careful reading by us of all the evidence, be disturbed if we were satisfied from the evidence that the condition of appellant in that regard is incurable. Incurably is, in our opinion, what is meant by " naturally," as used in the statute, when applied to impotency.

It can not be required that the condition should have existed always, as from causes existing at birth, in the nature of natural infirmities, to constitute natural impotency, for even if such a condition did exist, as in case of a malformation, and it was curable, it would not be a case of impotency against which an injured husband or wife would be entitled to relief by a divorce, unless the deformed party should refuse to submit to a cure. Bishop on M. and D., Sec. 332.

Nor would it be a cause of divorce if the impotency were natural in the sense that it occurred from accident or disease, unless it were incurable.

Therefore it seems to us, both upon reason and authority, that to be " naturally impotent," as said in the statute, is to be impotent or incapable in the matter of performing coition with the other sex as nature prompts, and incurably so.

And, indeed, such a meaning would seem to be found in the language of the statute, for it will be observed that it

not only reads that the party shall be impotent at the time of the marriage but must continue to be so. The length of time is not prescribed during which the impotency shall continue after marriage, and therefore it must be for such time as the court shall, in the exercise of a sound judicial discretion, determine to be sufficient to establish it under the circumstances of each particular case, and it does not seem as if any general rule applicable to all cases can be laid down.

The legislature may quite probably have had in mind as a basis the old ecclesiastical triennial period of cohabitation without consummation, after which impotency would be presumed, and while not intending to recognize that rule or to establish any fixed period, yet recognizing the salutariness of a rule that should require some reasonable period, had, by providing that the incapacity should continue after as well as exist at the time of the marriage, intended that the courts should determine it in each particular case upon the facts thereof.

Our Supreme Court has said, in Lorenz v. Lorenz, 93 Ill. 377 : " The burden of proof was on appellant to establish not only that appellee was impotent, as charged, but also that such impotency is incurable;" and the impotency must exist at the time of marriage. And so it is held by all authorities.

Closely associated with the question of curability, is that of whether the party affected will submit to such treatment, whether by self-control alone, or self-control coupled with medical or other applications, as will restore his powers.

For if, as held in cases of malformation, the person disabled will not submit to treatment that will remove the disability, he will attach to himself all the consequences of permanent and incurable impotency. 1 Bishop on M. & D., Sec. 332.

There is evidence in the case that strongly tends to prove that all that is required of the appellant is that he should, if addicted to a habit, abstain from it a reasonable length of time, when his powers and desires for sexual intercourse would recuperate.

The testimony of the physicians on both sides is that where impotency is caused by self-abuse, potency will be restored by a cessation of the habit, except perhaps in cases where it has been indulged in to a more destructive extent than would appear from the testimony of the two physicians who made a personal examination of appellant, to be the case with the appellant.

From that testimony it would seem that in cases of masturbators, impotency arises as much from the mental condition which the vice creates as from any purely physical cause, and that where, as appears to be the case here, the man is generally healthy and strong, the parts of generation normal in size and the secretions virile, a cessation of the practice of the vice would relieve the mind from its debasing effect, and with the mind relieved the aversion to the wife would cease and his potency for coition with her would be restored.

That the appellant was willing to try the effects of medical treatment upon himself appears in the fact that at the request of his wife he consulted with his family physician, who, testifying in his behalf, stated that the appellee informed him of appellant's practice of self-abuse which appellant, in his interview with him, denied, but did say that " he could not perform sufficient coitus," which explained, perhaps, by other portions of the testimony of the same witness, did not mean that " he could not perform sexual coitus at all," but that there was " some sexual irregularity;" that he was not " able to give as much satisfaction as seemed to be desired."

An element that the appellant, himself, says was the occasion of his nervousness and depression was a constant " nagging " of him by his wife concerning his incapacity as a newly married man. The appellee denies having ever worried him beyond upbraiding him for, and arresting him in his nasty practices. Placing her construction upon it, then, according to the testimony of the physicians in the case, the fact of knowledge by her of his habit would have a tendency to impair his mental regard for her and hence his physical capacity.

A stopping of the habit, and a cessation of upbraiding or "nagging," by the wife, would, we must conclude from the evidence, remove the cause for this trouble between the parties.

That being so, the only question is, has the appellant the will-power, and will he exercise it, necessary to cure himself?

We have seen that he did, at least, consult with his family physician, and as to whether he would do what alone seems to be necessary upon his part, assuming the worst against him, it seems, according to the following authority, that the time the parties lived together was too short to test that question.

The case of Stagg, falsely called Edgecombe v. Edgecombe, decided at Michaelmas term, 1863, and reported in 32 Law Journal, N. S. (P. M. and A.), is one very similar to this in the facts.

There the parties cohabitated from marriage, on July 2, 1861, until September 27th, of the same year, a period of eighty-seven days, without a consummation of the marriage, and the petition by the woman was for annullment of the marriage on the ground of the impotency of the man.

Medical inspectors were appointed at the instance of the petitioner, who personally examined the man, and reported that the external organs of generation " are perfectly natural and well formed, and as far as we are able to judge, fully competent to perform their functions."

They further reported that the man was twenty-nine years of age, and had been " the subject of fits since he was five years of age, and that he has practiced excessive self-abuse, masturbation, and has continued to do so since his marriage in 1861. Considering the foregoing facts, we can not but believe that there is a lack of virile power. The long continuance of the fits has, no doubt, induced great deficiency in the nervous system, but that is not a sufficient cause of impotency * * * ; the more probable cause is one of a mental or moral character, viz., self-abuse; this we know, if carried to any great extent, induces an aversion to the female sex. This cause is remediable, and

remains entirely at the option of the person concerned. Self-control may restore the natural feeling toward the wife; but the continuance of self-abuse will leave matters as they are." " It also appeared from the evidence that there was a possibility, but not a probability of the respondent's cure."

In its opinion, the court says: " Assuming her (the petitioner) to be a virgin intact, I can not make the decree prayed, for the medical men negative malformation; they negative impotency from disease or natural infirmity; but they ascribe the non-consummation of the marriage to temporary incapacity occasioned by the indulgence of a disgusting and degrading habit, and believe that such incapacity will continue until that habit is corrected but no longer. Moreover, the cohabitation continued but little more than two months. Now, where any manifest and incurable defect exists, the old rule as to triennial cohabitation has been relaxed; but even in such cases the court has never, that I am aware of, proceeded on so short a cohabitation as in this case. Here I have no right to assume that the incapacity will be permanent; and however painful it may be to the petitioner to resume cohabitation with the respondent, I feel bound to follow the precedent of Sir George Lee in Welde v. Welde, and dismiss the petition."

If we are to follow that case, which is so much in point, and its reason commends it to us, it is decisive of this case.

The decree on the original bill will therefore be reversed and the bill dismissed here.

Mr. Justice Gary. The statute of 1845 conferred upon the courts of chancery " power and authority to hear and determine all causes for a divorce, not provided for by any law of this State." Sec. 8, Ch. 33.

In the revision of 1874 that provision has been dropped, so that now no cause, not specified in the statute, is ground for divorce.

The rule that statutes are to be construed " according to the natural and most obvious import of the language, with-

out resorting to subtle and forced construction, for the purpose of either limiting or extending their operation," has the sanction of the Supreme Court, and of this court. Beardstown v. Virginia, 76 Ill. 34; Epps v. Epps, 17 Ill. App. 196.

The words of the statute are "naturally impotent." If these are to be construed according to that rule, only a congenital incapacity is ground for divorce.

We do not say of a man who has lost a limb, or been distorted by accident, that he is naturally deformed; or of one who from a blow upon the head has lost his wits, that he is naturally foolish.

Is it true that a girl, young, innocent, ignorant and poor, marrying a millionaire octogenarian, who, if speaking truly, would, with Othello, say, "the young affects in me defunct," may, as soon as she is instructed, claim a divorce and liberal alimony?

I do not know of any allusion to such a question in any English book, but it would seem from what Gutierres says, pp. 159–162, part 3, Vol. 2, Codigo de la Reforma, that by the canon law such a marriage would be a nullity.

But no provision is made in this State for declaring a marriage a nullity, unless by implication on account of a prior marriage, under Sec. 3; and it may have been for the purpose of protecting the octogenarian that the word "naturally" was inserted. I do not dissent from the conclusion arrived at by the majority of the court and am not sure that I do from the process.