EDITH GRIFFETH

*v.*

ABRAHAM L. GRIFFETH.

*Filed at Ottawa March 28, 1896—Rehearing denied October 9, 1896.*

1. DIVORCE—*when divorce will be granted wife on the ground of impotence.*  Perversion in mind and body of a husband, existing at the time of his marriage, arising from the long practice of self-abuse, depriving him of the ability to perform the act of coition, is cause for divorce by the wife, where efforts to cure him have failed.

2. SAME—*meaning of words "naturally impotent," in statute.*  The words "naturally impotent," as used in the statute relating to divorce, (Rev. Stat. 1874, chap. 40, sec. 1,)·mean incurably impotent, and do not refer to congenital incapacity; and those words include impotency resulting from self-abuse.

3. WITNESSES—*divorced wife incompetent to prove impotence of former husband.*  A divorced wife is incompetent, in a suit for divorce by a second wife on the ground of the impotency of the husband due to self-abuse, to testify to acts of self-abuse witnessed by her while his wife, and to his impotency at that time.

4. APPEALS AND ERRORS—*when admission of incompetent testimony will not reverse.*  A decree of divorce will not be reversed because of error in permitting the incompetent deposition of a former wife to be read, where there was sufficient oral evidence to sustain the finding of the chancellor.

*Griffith* v. *Griffith,* 55 Ill. App. 474, reversed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

MILCHRIST & SMITH, and M. W. ROBINSON, for plaintiff in error:

Evidence that a cure will require self-control, which the party will not exercise, as abstinence from self-abuse, is held to be proof of incurability. Stewart on Marriage and Divorce, sec. 65, note 10; 3 Swab. & T. 240; 4 id. 86.

THOMAS J. HOLMES, for defendant in error:

The burden of proof in this suit is on the plaintiff to establish both that the impotency existed at the time of marriage and that it is incurable. 1 Bishop on Marriage and Divorce, (5th ed.) sec. 332; *Newell* v. *Newell*, 9 Paige, 25; *Devenbaugh* v. *Devenbaugh*, 5 id. 554; *Welde* v. *Welde*, 2 Lee, (Eng. Ecc.) 580.

It should also be noticed in this case that the bill does not charge that the defendant is naturally impotent, the proofs do not show it, and neither does the decree find that he is naturally impotent, and for these reasons, among others, the original decree was fatally defective. 1 Bishop on Marriage and Divorce, (5th ed.) sec. 337; Stewart on Marriage and Divorce, sec. 64; *Newell* v. *Newell*, 9 Paige, 25; *Devenbaugh* v. *Devenbaugh*, 5 id. 554; *Welde* v. *Welde*, 2 Lee, 578; *Lorenz* v. *Lorenz*, 93 Ill. 376.

The proper and only way to proceed is by inspection of the private parts by competent medical witnesses. Stewart on Marriage and Divorce, sec. 66; *LeBarron* v. *LeBarron*, 35 Vt. 365; *Devenbaugh* v. *Devenbaugh*, 5 Paige, 556; *Newell* v. *Newell*, 9 id. 25.

From the testimony of complainant the defendant made a confession of his alleged condition previous to marriage. If this is so, it defeats this action. Stewart on Marriage and Divorce, sec. 65; 33 Md. 401.

The court erred in not compelling an examination, by medical experts, of the person of the complainant. 3 Swab. & T. 240.

The English matrimonial law is binding in marriage and divorce cases in this country. 1 Bishop on Marriage

and Divorce, (5th ed.) sec. 71; *LeBarron* v. *LeBarron,* 35 Vt. 365.

The principles and procedure as to the canonical disabilities, one of which is impotency, are the same as those of the ecclesiastical courts. Stewart on Marriage and Divorce, sec. 224; 33 Md. 401.

The former wife of the defendant should not have been permitted to testify in the present case, for the reason the matters and things testified to by her are not the exceptions made by section 5, chapter 51, of the Revised Statutes. *Waddams* v. *Humphrey,* 22 Ill. 661; *Keep* v. *Briggs,* 12 Ill. App. 511; *Smith* v. *Long,* 106 Ill. 485; *Treleaven* v. *Dixon,* 119 id. 549; *Way* v. *Harriman,* 126 id. 132; *Crose* v. *Rutledge,* 81 id. 266.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is a bill for divorce, filed by the plaintiff in error against the defendant in error, upon the ground of the impotency of the husband. The defendant filed an answer denying the material allegations of the bill, and also a cross-bill praying for a divorce from the complainant, charging her with an attempt to poison him, and with extreme and repeated cruelty. The complainant demurred to portions of the cross-bill, and answered the balance. The demurrer was subsequently confessed. The original bill was filed January 5, 1894, and on May 21, 1894, the circuit court, after hearing had, dismissed the cross-bill, and, finding the allegations of the original bill as to impotency to be true, decreed that complainant be divorced from the defendant, and that the latter pay alimony and attorney's fees, etc. Upon appeal to the Appellate Court, that court reversed the decree of divorce entered by the circuit court, and dismissed the bill without remanding the cause. The present writ of error is sued out for the purpose of reviewing the judgment of the Appellate Court.

The parties were married on October 23, 1893, and lived together until December 18, 1893, when the wife left her husband, and commenced this proceeding for divorce. She was twenty-five years old, and he was twenty-nine years old. The bill charges, that, after her marriage, the complainant discovered that the defendant had for years before said marriage been addicted to self-abuse or masturbation, and that the practice of this vice had so injuriously affected his sexual functions as to destroy his capacity and his desire for sexual intercourse. We do not deem it necessary to enter into a discussion of the testimony in this record, the most of which is filthy and revolting in the extreme. It is sufficient to say, that, in our opinion, it was such as to justify the decree of the circuit court, and that the Appellate Court erred in reversing that decree.

Impotence has been defined to be "such an incurable incapacity as admits of neither copulation nor procreation." (1 Bishop on Marriage and Divorce, —5th ed.—sec. 332). Section 1 of the Divorce act of Illinois provides, "that in every case in which a marriage has been, or hereafter may be, contracted and solemnized between any two persons, and it shall be adjudged, in the manner hereinafter provided, that either party, at the time of such marriage, was and continues to be naturally impotent, * * * it shall be lawful for the injured party to obtain a divorce and dissolution of such marriage contract." (Rev. Stat. chap. 40, sec. 1). To obtain a divorce upon the ground of impotency, it must be shown, as it has been shown in the case at bar, that the defect existed at the time of the marriage and that it is incurable; and the burden of proof is upon the complainant to establish these facts. (1 Bishop on Marriage and Divorce,—5th ed.—sec. 322; *Lorenz* v. *Lorenz*, 93 Ill. 376). Where the defect in the husband proceeds from self-abuse, if he will not exercise a moral restraint over himself, and test the curability of his disorder by proper self-control, his wife has a right

of action on the ground of his impotence. (Browne's Commentary on the Law of Divorce and Alimony, p. 184).

"Where the wife is the applicant, and the impotence of the husband proceeds from self-abuse which may be cured by his exercising moral restraint over himself, yet not otherwise, and he will not exercise such restraint, this sort of curability, it would seem, is not deemed to take away her right to the divorce." (1 Bishop on Marriage, Divorce and Sep. sec. 789; 1 Bishop on Marriage and Divorce,—5th ed.—sec. 322). The proof here shows, that efforts were made to cure the husband, and that he would not exercise moral restraint over himself. The evidence "tends strongly to establish the fact," as is well said by the Appellate Court in its opinion, "that through long continued indulgence in self-abuse," the defendant in error "had become so perverted in mind and body as to deprive him of the present desire and ability to perform the act of coition with his wife."

An old rule of the canon law prevailed in the ecclesiastical courts of England, which is known as the rule of triennial cohabitation. By that rule the parties were required to live together for three years, and, if at the end of that time, the marriage remained unconsummated, impotence was to be presumed. But this rule has not been so often applied since the law of evidence has been altered, so as to permit the parties to take the stand as witnesses in their own cause. (2 Bishop on Marriage and Divorce,—5th ed.—secs. 585, 589). The English courts have lately modified the rule of triennial cohabitation, and hold that the rule does not apply when the court is satisfied by other evidence, for example, of the wife herself, of the husband's impotence. (2 Bishop on Marriage and Divorce,—5th ed.—sec. 588a). In *F.* v. *D.* 4 Swab. & Tr. 86, the Judge Ordinary said: "There remains the rule as to triennial cohabitation; this rule only applies when the impotence is left to be presumed from continued non-consummation; for when the impotence is clearly proved

*aliunde*, the court has never resorted to it.   The present
case falls rather within the latter class; for, if I may rely
upon the petitioner's oath, the impotence is beyond a
doubt."

Objection is made, that the circuit court improperly
permitted the deposition of Ida H. Griffeth, a former wife
of the defendant in error, to be read in evidence in behalf
of plaintiff in error upon the hearing below.   We think,
that proper objection was made to the deposition and to
the reading of it, and that a proper motion was made to
exclude it.   It seems, that, in March, 1885, the defendant
in error married said Ida, and subsequently was divorced
from her.   She lived with him as his wife about three
weeks in 1885 and then left him, and, after an absence of
three years, lived with him again in 1888 for about two
weeks.   This former wife, Ida, swore in her deposition,
that, in 1885 and 1888, the defendant in error was impo-
tent and was then addicted to self-abuse, and that she
had, while his wife, witnessed his acts of self-abuse.   The
same testimony as to witnessing such acts was given by
the present wife, but in the latter case it was perfectly
competent evidence, as this is a divorce suit between
herself and defendant in error, and she was authorized
to testify by section 5 of the act in relation to evidence,
etc.   (1 Starr & Cur. Stat. p. 1077).

We do not think, however, that the testimony of the
former wife, Ida, should have been admitted.   It is true,
that the marriage between herself and defendant in error
had been dissolved.   But this is a suit between her for-
mer husband and his present wife, who is a third party
so far as the divorced wife is concerned.   The proviso
to section 5 of the act in regard to evidence forbids the
husband or wife to testify to any admissions or conver-
sations of the other, whether made by one to the other,
or by either to third persons, except in suits between
themselves.   Whether the divorced wife's knowledge of
her husband's conduct in the respect here referred to

came to her as the result of his admissions to her or of her conversations with him, or as the result merely of her own observation, it was acquired in the confidence of the marriage relation, and, therefore, her evidence in regard to it should have been excluded upon principles of public policy. The protecting seal of the law is placed upon all confidential communications between the husband and the wife, except so far as our statute has changed the rule. It makes no difference, that the marriage relation no longer exists between them. "Whatever has come to the knowledge of either by means of the hallowed confidence, which that relation inspires, can not be afterwards divulged in testimony, even though the other party be no longer living." (1 Greenleaf on Evidence, sec. 337). Accordingly, in *Crose* v. *Rutledge*, 81 Ill. 266, we said (p. 268): "The defense offered the divorced wife of the plaintiff as a witness to prove a fact which must have come to her knowledge, from the very nature of the fact, during the existence of the marital relation. This testimony was properly excluded.—*Waddams* v. *Humphrey*, 22 Ill. 661."

But it does not follow, that the decree of the circuit court should be reversed because of the error in permitting the deposition of Mrs. Ida H. Griffeth to be read. In a chancery cause, if there is competent evidence in the record sufficient to sustain the decree, it will be affirmed, even though some incompetent testimony may have been admitted. (*Smith* v. *Long*, 106 Ill. 485; *Treleaven* v. *Dixon*, 119 id. 548). "In chancery cases the practice is, not to reverse for erroneous rulings in the admitting or excluding of evidence, unless it is seen, after an inspection of the entire record, that different rulings might have induced a different decree." (*Willemin* v. *Dunn*, 93 Ill. 511). After excluding the deposition in question, there is here evidence enough in the record to sustain the finding of the chancellor. The question, whether the defendant was guilty or not of the charge against

him, was not submitted to a jury, but all the testimony was submitted to the court, as in any ordinary chancery case. With the exception of the deposition of the divorced wife, all the evidence was given orally in open court. Where such is the case, this court will not disturb the decree, unless it is manifestly against the weight of the evidence. We are unable to say, that this decree is manifestly against the weight of the remaining evidence after the exclusion of the deposition. The most that can be said is, that such remaining evidence is conflicting and evenly balanced, and, this being so, the decree, entered as it was upon the testimony of witnesses heard in open court, ought not to be disturbed, there being no clear and palpable error in the finding of the facts. "It is a familiar rule, that, where the witnesses are thus examined, seen and heard, much weight is given to the findings, because of the better opportunity of arriving at a correct conclusion as to the facts, where the question is dependent on the credibility of the witnesses, and the weight to be given to their testimony." (*Rackley* v. *Rackley*, 151 Ill. 332).

It is claimed, that our statute, by the use of the words, "naturally impotent," only contemplates, as a cause for divorce, such impotency as exists from birth, and results from a defect caused by nature. It is difficult to define the exact meaning of the term, "naturally impotent." In construing a statute of the State of Pennsylvania, where the words were, "was and still is naturally impotent," a court of common pleas in that State said: "Taken literally the word, 'naturally,' would exclude an impotency caused by an injury after birth. Yet it certainly does not exclude such a case. * * * On authority and reason, we have no doubt, that our statute means incurable impotency." (*A. C.* v. *B. C.* 10 Weekly Notes of Cases, (Pa.) 569).

Blackstone says: "Corporal imbecility may arise after the marriage, which will not then vacate the marriage,

because there was no fraud in the original contract."
(1 Blackstone's Com. 440, note 12). In commenting upon
this statement of Blackstone, the Supreme Court of Con-
necticut has said: "Here, he * * * clearly rejects the
idea, that the term, 'corporal imbecility,' has a precise,
technical meaning, and absolutely imports a natural,
permanent and incurable impotency;" thus implying that
the words "natural" and "incurable" have the same, or a
similar, meaning, as applied to impotency. (*Ferris* v.
*Ferris*, 8 Conn. 166. See, also, *Kempf* v. *Kempf*, 34 Mo. 211).
The uniform ruling of the English courts has been, that
the alleged incapacity must exist at the time of the mar-
riage, and continue, and be incurable, and that it must
be proven affirmatively to be so. (*Devanbagh* v. *Devanbagh*,
5 Paige, 553; *A. C.* v. *B. C. supra*). Mr. Bishop, after stat-
ing that the incapacity must exist at the time of the nup-
tials, and that the marriage will be good even if one party
becomes impotent after marriage, says: "The origin of
the impotence is unimportant. If it existed at the mar-
riage, it is equally a ground of nullity whether it existed
also at the birth, or came afterwards from the party's
own fault, from the fault of another, or from an accident
for which no one is responsible." (1 Bishop on Mar., Div.
and Sep. secs. 776, 777).

It has been said, that one, who marries another, con-
scious of his impotence, is guilty of fraud, and, if not con-
scious of it, he equally violates his contract to the other's
detriment; so that, in the first case, the marriage would
be voidable on the ground of fraud, if the principles
governing ordinary contracts were applied to it; and, in
the second case, the marriage would be voidable on the
ground of mistake; although an impotent person marry-
ing is not regarded as committing a fraud in the ordinary
sense. (1 Bishop on Mar., Div. and Sep. secs. 763, 764).

It being established, that the incapacity must exist
at the date of the marriage, and that it must be incura-
ble, it is difficult to perceive what difference it can make,

whether it existed at birth and by some formation or malformation of nature, or was caused by the party's own fault. We are inclined to concur with the Appellate Court in the following statement. made by that court in its opinion in this case: "Incurably is, in our opinion, what is meant by 'naturally,' as used in the statute, when applied to impotency. * * * It seems to us both upon .reason and authority, that to be 'naturally impotent,' as said in the statute, is to be impotent or incapable in the matter of performing coition with the other sex as nature prompts, and incurably so." (*Griffith* v. *Griffith*, 55 Ill. App. 474).

For the reasons here stated the judgment of the Appellate Court is reversed, and the decree of the circuit court is affirmed.

*Judgment reversed.*