## C. E. Jorden v. Catherine M. Jorden.

1.   DIVORCE—*Impotency as a Cause.*—The term "naturally impotent" as a cause for divorce, as used in R. S., Chap. 40, Sec. 1, is to be construed as meaning incurably impotent, and not as referring to congenital incapacity.

2.   SAME—*Condonation—Acceptance of the Situation, etc.*—Where there has been cohabitation for a number of years between married people, with a full knowledge on the part of the husband of the wife's impotency, and without complaint, he must, in the absence of strong rebutting facts, be taken to have accepted the situation and can not be heard to complain.

Divorce.—Error to the Circuit Court of Knox County; the Hon. GEORGE W. THOMPSON, Judge, presiding.   Heard in this court at the April term, 1900.   Affirmed.   Opinion filed February 13, 1901.

J. A. McKENZIE and J. J. WELSH, attorneys for plaintiff in error.

Natural impotency, as the term is used in our statute, means any incurable impotency, which exists at the time of the marriage. Griffith v. Griffith, 55 Ill. App. 474; same v. same, 162 Ill. 368.

Even if the evidence shows the impotency to be curable, that would be no defense if there was lack of moral will power or of courage to attempt the cure. Griffith v. Griffith, 162 Ill. 368; see also Bishop on M. and D. (6th Ed.), Sec. 332.

Impotency is the want of capacity for ordinary and complete copulation. Bishop on Marriage and Divorce, Sec. 327.

Sexual intercourse in the proper meaning of the term is ordinary and complete intercourse, not partial or imperfect intercourse. It is *vera copula*. Ibid., and authorities there cited.

When the coitus is imperfect it is unnatural and the party is impotent. Ibid. 329; also G. v. G., 33 Md. 401.

The authorities are uniform that the main objects of marriage are the gratification of natural desires and the procreation of the species. That is so eminently a question of common sense and common morality that a copying of authority is unnecessary.

A defect which renders a party unfit for sexual intercourse is cause for divorce; is impotence. Am. and Eng. Ency. of Law, Vol. 14, page 493, and authorities there cited.

CHARLES K. LADD, attorney for defendant in error.

The defendant's first contention, that complainant can not now ask a divorce for that of which he had notice, I think needs no citation of authority nor the proposition that he is chargeable with notice of all that a reasonably cautious man would have known on further inquiry if he had followed up the knowledge he had of her health and the surgical operation.

Natural impotency can only mean and does mean that the parties can not copulate. One may be sterile, but if copulation can be had it is not impotency. Griffith v. Griffith, 162 Ill. 377; Bishop on Marriage, Divorce and Sep-

Jorden v. Jorden.

aration, Secs. 758, 766, 768 and 769; Schouler on Dom. Rel., Sec. 19.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a bill for divorce filed by plaintiff in error against defendant in error at the November term, 1898, of the Circuit Court of Knox County. It is charged in the bill that plaintiff in error discovered shortly after the marriage, that defendant in error was at the time of the marriage and has continued to be naturally impotent; that shortly prior to the marriage she had, by a surgical operation, caused her ovaries to be removed, without the knowledge or consent of plaintiff in error, "so that said marriage could not be consummated by the sexual intercourse of the parties;" that said impotency and physical incapacity still exist and are incurable.

In her answer defendant in error admits the performance of the surgical operation, but avers that it took place by the advice and with the full knowledge and consent of plaintiff in error. She denies that she is naturally impotent or that her ailment is incurable and says that "it is not true that said marriage was not and could not be consummated by the sexual intercourse of the parties." Upon the hearing the court found for defendant in error and dismissed the bill at the cost of plaintiff in error. The latter brings the case here by writ of error.

The proof shows that the parties were married March 3, 1898, and lived together until the following August; that about a year prior to the marriage she was quite ill and it became necessary for her to submit to a surgical operation; that she was taken from her home near Kewanee to a hospital in Chicago, where the surgeon in charge performed the operation, removing both ovaries and fallopian tubes, and that she never fully recovered her health after the operation.

It appears from the testimony of two physicians, one sworn for complainant below and one for defendant, that while the removal of the ovaries substantially destroyed sexual desire in a woman and rendered it impossible for her

to bear children, yet that it would still be possible for her to engage in sexual intercourse. In fact both the parties to the suit testified that they had sexual intercourse with each other after the marriage.

The question then arises whether a woman who is capable of coition, but who is incapable of bearing offspring, can rightfully be said to be "naturally impotent," in the language of the statute. Bishop in his work on Marriage and Divorce (Sec. 228) defines impotency as "such an incurable incapacity that the party can neither copulate nor procreate;" nor are we without authority on the subject in this State. In Griffith v. Griffith, 55 Ill. App. 474, it is said:

"It seems to us, both upon reason and authority, that to be 'naturally impotent,' as said in the statute, is to be impotent or incapable in the matter of performing coition with the other sex as nature prompts, and incurably so."

This language is quoted and concurred in by the Supreme Court in the same case on appeal. (162 Ill. 368.)

In view of these authorities, we are of opinion that the charge in the bill that defendant in error was and is naturally impotent, is not sustained.

It may be said that the weight of the evidence is that plaintiff in error knew of the nature of the operation and the effect it would have, before he married defendant in error.

In Peipho v. Peipho, 88 Ill. 438, where the charge was the impotency of the wife, it was held, that where there was cohabitation for a number of years with full knowledge of the facts and without complaint, the husband, in the absence of strong rebutting facts, must be taken to have accepted the situation and could not then be heard to complain, and this doctrine is approved in Lorenz v. Lorenz, 93 Ill. 376. With much more reason should plaintiff in error, who married defendant in error with full knowledge of the facts, be barred, in equity, from the relief sought.

The decree of the court below will therefore be affirmed.