CHARLES A. CRUMBAUGH *et al.* Appellees, *vs.* WESLEY M. OWEN, Exr., Appellant.

*Opinion filed February 19, 1909.*

1. WILLS—*alleged spirit directions must not only be made but yielded to.* Before the will of a spiritualist can be set aside upon the ground that it was made by alleged spirit directions, it must be shown not only that the testator believed the alleged directions were given to him, but also that he yielded to such directions, so that the will was not the result of his deliberate judgment.

2. SAME—*will cannot be destroyed by declarations of the testator.* A will executed in accordance with the provisions of the statute cannot be destroyed by proof of the declarations of the testator before or after the making of the will, except in so far as such declarations bear upon the question of testamentary capacity.

3. SAME—*a will should not be set aside because testator's religious belief is considered to be irrational.* The fact that the testator's implicit belief in spiritualism may be considered by the jury to be unreasonable and irrational is not ground for setting aside the will against evidence clearly establishing that the testator possessed the requisite testamentary capacity; and if there is no evidence to support the issue of undue influence and none to support the claim of insane delusion which cannot be reasonably accounted for in the testator's religious belief, the court should direct a verdict for the proponents.

4. SAME—*when letters found after the testator's death are not admissible.* Letters found, after the testator's death, in an envelope on which "Spirit communications" is marked in handwriting claimed to be the testator's, are not admissible in a proceeding to contest his will, where there is no evidence that the testator ever acted in any way upon their contents or approved thereof and, where there is nothing in them having any reference to the will.

5. APPEALS AND ERRORS—*when Supreme Court may reverse decree setting aside will, without remanding.* The Supreme Court may, without remanding the cause, reverse a decree setting aside a will where there have been two trials, in both of which the verdict of the jury against the will was without evidence to support it, and where it is apparent that all the evidence which can be obtained has been produced and that in the event of another trial a verdict against the will would have to be set aside.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

238—32

FIFER & FIFER, HERRICK & HERRICK, WELTY, STER-
LING & WHITMORE, and BARRY & MORRISSEY, for appellant.

A. E. DEMANGE, JAMES F. BISHOP, EARL D. RIDDLE,
BEACH, HODNETT & TRAPP, and STONE & OGLEVEE, for
appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by the appellees against
the appellant and others, in the circuit court of McLean
county, to set aside the last will and testament of James T.
Crumbaugh, deceased, on the ground of undue influence and
the want of testamentary capacity in said James T. Crum-
baugh to make a will. An answer and replication were filed
and issues of fact were made up and submitted to a jury,
which decided that the instrument offered in evidence was
not the will of James T. Crumbaugh, and a decree was en-
tered in accordance with the finding of the jury. That de-
cree was reversed by the judgment of this court upon the
appeal of the executor, Wesley M. Owen, and the case was
remanded to the circuit court, and in the opinion filed in
that case, reported as *Owen* v. *Crumbaugh,* 228 Ill. 380,
will be found a full discussion of the law applicable to the
facts in this case and a copy of such portions of the will
as throw any light upon the questions here involved. Upon
the case being re-docketed in the circuit court, upon the mo-
tion of the defendants the bill was dismissed for want of
equity, without the questions involved being again submit-
ted to a jury. The case was then brought before this court
by appeal by the complainants, and the decree of the circuit
court was again reversed and the cause remanded to the
circuit court for a new trial before a jury. (*Crumbaugh* v.
*Owen,* 232 Ill. 191.) On the case being again re-docketed
the issues were submitted to a jury, which found against
the will, and a decree having been entered in accordance

with the finding of the jury, the case is here upon the second appeal of the executor.

When the case was here the first time, this court, on page 393 of the opinion, said: "So far as the issue of undue influence is concerned, considered separately from the alleged delusions of the testator in regard to spiritualism, but little need be said. While the contention of contestants on this issue is not abandoned, still the evidence introduced in support of such contention is so meager that it cannot be seriously contended that the contestants' position on this point is supported to such extent as to require any extended notice by this court. It is apparent from the method of treatment in the respective briefs of the parties that the controversy in regard to Crumbaugh's testamentary capacity is regarded by both parties as the paramount and controlling issue in this case." And after an exhaustive review of the facts and the law, the court, on page 413 of the opinion, said: "The verdict of the jury in this case is entitled to the weight and consideration that is accorded to a verdict in a law case; but a verdict in a law case cannot stand without some evidence to support it. Here, as we have seen, there is none, unless we are prepared to say that the bare fact that the testator was a spiritualist proves that he was insane. Such a holding would find no support in the law. Proponents requested the court to direct a verdict in their favor, which was refused. If there was evidence requiring the court to submit the case to the jury the refusal of the request was not error. If, upon the whole case, there was evidence fairly tending to support contestants' bill the motion was properly denied. After giving this case the careful examination which its importance requires, we are firmly convinced that there is no evidence here even raising a suspicion in our minds that the testator was not entirely sane and as competent to make a will or transact any other kind of business as the average business man. We have examined the evidence with great care, and when

it is all summarized and reduced to its final results it only proves that Crumbaugh was a believer in spiritualism; that he thought that he was doing a philanthropic work for his friends in Leroy by leaving this estate to establish this church and library, and however much one may differ from him as to the advisability of such a devise, that has nothing to do with the legal status of the will. If the testator had the capacity to make the will he had the capacity to select the beneficiaries. This he has done, and there the matter must rest." And the court, on page 414, said: "The court erred in refusing to direct a verdict for proponents, for which the decree must be reversed." When the case was here the second time the court said (p. 196): "When this case is again re-docketed in the circuit court it will be for trial by jury precisely as in the first instance. If it is again submitted to a jury and the proof is not substantially different from that offered upon the first trial, the chancellor should, upon proper motion made either at the close of the evidence for the contestants or at the close of all the evidence, direct a verdict for the proponents. If the evidence should be substantially different and such motion should be made, the chancellor, in disposing of it, should be governed by the ordinary rules applicable in such case." The question, therefore, now presented for decision is, are the proofs in this regard substantially different from those offered upon the first trial?

Upon the first trial twenty-four lay witnesses and eight physicians testified on behalf of the complainants and fifty-five non-expert witnesses and twelve expert witnesses testified on behalf of the defendants, while upon the last trial eighty-seven witnesses testified in favor of the defendants and twenty-six in favor of the complainants, no expert evidence being offered by either of the parties. The testimony in this regard, with three exceptions which will hereinafter be considered, is of the same character and to the same effect as was the evidence introduced upon the first trial, and

the testimony of the witnesses upon either side, upon the last trial, who were not called on the first trial, was merely cumulative and corroborative of what had been testified to on the first trial, and when the evidence offered upon this trial is considered as a whole, it clearly established that James T. Crumbaugh, at the time he made his will, was in all the business affairs of life entirely rational and sane, and demonstrated to be a man of excellent judgment, prudence and forethought. This record, as did the former record, shows a total want of evidence to establish, even in the remotest degree, that the testator was influenced in making his will, in any way, by any living person, or that the will, when executed, did not dispose of the property of the testator exactly as he desired to dispose of it by his will. If, therefore, the will is to be set aside, it can only be done on the ground, *first*, that James T. Crumbaugh, at the time he made his will, was a spiritualist; or upon the ground, *second*, that he was influenced to make said will by the direction and suggestion of the spirit of his deceased child, which communicated with him, or which he believed communicated with him, through the instrumentality of certain mediums with whom he came in contact at public or private seances, and otherwise.

With reference to the first proposition,—that is, that the will should be set aside because James T. Crumbaugh, at the time he made the will, was a spiritualist,—this court, in *Owen* v. *Crumbaugh,* 228 Ill. 380, on page 407, said: "There is not in this record a scintilla of evidence of insane delusions in the testator outside of the bare fact that he believed in the general doctrine of the spiritualist organization. This is not insanity and it is no evidence of a want of testamentary capacity." The same facts found in the record upon which that statement was based are found in this record, and no other additional facts upon that proposition are found in this record that were not found, in substance, in the record when the case was here the first time,

and unless this court is now ready to assume the position (which it is not) that no spiritualist can make a will, we must now hold, as we did then, that James T. Crumbaugh was not insane upon the subject of spiritualism at the time he made his will. The paramount question, therefore, is, was the testator influenced by spirits, or by spirit communications, to make his will?

In the first opinion filed in this court, on page 411, it was said: "There is not a particle of evidence in this record that the testator ever claimed to have had any spiritual direction from Bright Eyes, or any other spiritual manifestation, directing or suggesting the making of the will in question. On the contrary, he expressly declared in the will itself that 'I have not been influenced by any person or spirits, but have only made same after many weeks of study, thought and consideration,' etc., thus showing, as clearly as language can make it appear, that the testamentary scheme to build a church and a public library in his city,—the former, especially, for the benefit of the spiritualist organization and the latter for the benefit of the public in general,— was a plan originated, worked out and matured in the mind of the testator, uninfluenced by any persons or spiritual manifestations whatever."

Upon the last trial, in view of the foregoing statements found in the opinion of this court, the appellees endeavored to supply the evidence the want of which was implied in the suggestion of the court, and to establish upon this trial that the will was made by the testator in consequence of certain directions and suggestions of Bright Eyes, who was believed by the testator to be the spirit of his son who died in infancy and who in the spirit land had developed into a mature man, and who, he claimed, acted as his spirit guide. The expressions in the opinion, above referred to, were used by way of argument and illustration, and implied not only that directions and suggestions must have been made to the testator from the spirit world as to the disposition

of his property by will, but that he had yielded to such directions and suggestions, and that the will was therefore not made as the result of the deliberate action and judgment of James T. Crumbaugh, but was executed as the result of the directions and suggestions to him of the spirit of his dead child. The evidence found in this record which was not found in the record when the case was here the first time was intended by the complainants to establish that the will was made as the result of certain directions and suggestions to the testator from the spirit world. This new evidence consists of the testimony of Isaac Pemberton, Dr. N. T. Mace, (a dentist,) and Mary Christ. The testimony of Pemberton and Mace in part relates to conversations with the testator which they claim antedate a short time the making of the will. Mrs. Christ did not become acquainted with the testator until some two years after the will was made, and her testimony covers a period from 1903 to 1905.

Isaac Pemberton was an old man, about seventy-three years of age, who seems to have been without business for many years, who resided with his son at the time of the trial, and testified that before he went to live with his son he had been staying around with his folks, and who admitted he had lived with Mrs. Moore, a medium, for twenty years in an open state of adultery. His testimony, in substance, was, that in June, 1901,—the will bore date October 10, 1901,—he, in company with Mrs. Moore, who he says practiced in various places as a spiritualist medium, were holding seances at the house of the testator; that Bright Eyes appeared and called the testator "Papa," and said to him he wanted him to make a will and leave his property to build a spiritualist temple and maintain it; that something was said at the same time about building a library, but he could not state what was said on that subject.

N. T. Mace testified, in substance, that in 1901 or 1902 he had a conversation with testator; that the testator said he was going to make his will; that "the spirits were going

to guide him in making his will,—the spirits through the mediums;" that he said to the testator that "there might be bad spirits as well as good ones," and asked the testator "how he knew but what it was a bad spirit guiding him;" that the testator said "they had never lied to him yet; that his guide never lied to him yet or deceived him." The reputation for truth and veracity of this witness was successfully impeached by eight of his neighbors.

Mrs. Christ, apparently a harmless, ignorant old woman, testified that she became acquainted with the testator in 1903; that she was at his house frequently, up to 1905; that she attended seances with the testator and his wife; that Bright Eyes came and advised the testator how to make his will; that the testator said that he wanted to make it as Bright Eyes wanted him to; that he wanted to be a rich man on earth and wanted the best on the other side, and by willing everything to the church he was building a mansion for himself; that no emperor or king or potentate would be so high as he in the spirit land; that Bright Eyes told him every brick he put in the church added to the mansions that he was building for himself higher up; every stone or brick he laid added to his crown. She further testified that at the time she heard these communications she believed that they were genuine spirit communications but that now she thought they were not.

There were also introduced in evidence certain letters found shortly before the last trial in a box in the garret of the house in which the testator had formerly made his home, a part of which were in an envelope marked (in the handwriting of testator, as it was claimed,) "spirit communications." These letters in no way referred to the will, and, if genuine, were such letters as anyone of the religious faith of the testator might have in his possession.

We think it apparent to any fair-minded person that the testimony of Pemberton, Mace and Mrs. Christ is very unsatisfactory and entitled to but little weight, if any. Pem-

berton testified that he and Mrs. Moore were engaged in practicing a fraud upon the testator at the time the declarations which he heard from Bright Eyes were made, and the reputation for truth and veracity of Mace is so far shattered that no weight can be given to it, and the claimed declarations made by the testator or by claimed spirits in his presence, when Mrs. Christ was present, were made long after the will was executed and could have had no effect upon the execution of the will.   But conceding all that these three witnesses testified to to be true, there is not the least particle of evidence in this record to show that what Bright Eyes or any other spirit is claimed to have said to the testator had anything to do with the making of the will. Three apparently reputable witnesses, who are entirely disinterested, testified that long before the time fixed by Pemberton and Mace,—one as early as in 1897, another in 1899 and another in 1900,—when the directions and suggestions with reference to the making of the will were made to the testator from the spirit land, he had fully formulated his plans and had fully determined to devote a portion of his estate to the erection of a spiritualist church and a public library upon the precise site where he provided in his will they should be erected.   Rev. James Carney, pastor of the Universalist church at Leroy, who was an intimate friend of the testator, testified that in 1896 or 1897 the testator stated to him that he and his wife had determined to build a spiritualist church and a library upon the lots near their house.   William Underwood testified that in the spring of 1899 he was building his house; that he stated to Mr. Crumbaugh at that time that the lots set apart by the will as a place upon which to erect the church and library would make a nice dwelling lot, and that the testator replied to him that there would never be a dwelling there; that he was going to put up a spiritualist church and a public library on those lots, or that it would be done after his death. Mr. Lee Baker also testified that in 1900 the testator was

talking with him and said he wanted to build a church for spiritualism, to advance the cause. Pemberton also testified that Bright Eyes directed the testator to devote his entire estate to the erection of a spiritualist temple and its maintenance, while the evidence shows he devoted only a portion thereof to the erection of a church and a public library, numerous of his relatives being remembered in his will by substantial legacies, two hundred acres of his land devised to his wife and all of his personal property given to her absolutely, she to have the right to enjoy the income of his entire estate during her natural life in case she survived him. Pemberton also testified that the directions and suggestions given to him by the spirit of his departed son were a fraud and a hoax, and that such spirit manifestations were only the work of a designing woman. This feature of the testimony of Pemberton we think clearly stamps his testimony as a fabrication. If the medium through whom communications were conveyed was perpetrating a fraud upon the testator and thereby endeavoring to induce him to make a will at her own instance or at the instance of the executor, Wesley M. Owen, it is strange that the will was not constructed in such a manner as to benefit the medium or Wesley M. Owen, neither of whom took anything under the provisions of the will.

It is well established that a testator who has executed a will in accordance with the provisions of the statute can not destroy it by what he may have said before its execution or by what he may have said after its execution. (*Waters v. Waters,* 222 Ill. 26.) Under the rule thus announced, · much of the testimony of Pemberton and Mace, and substantially all the testimony of Mrs. Christ, was incompetent. The statements of the testator made in the presence of Pemberton, Mace and Mrs. Christ, before or subsequent to the execution of the will, could have no bearing upon the validity of the will, except in so far as it bore upon the testamentary capacity of the testator. It is also a general rule

that before letters found in the possession of a party are admissible against him in evidence, the party in whose possession they are found and against whom they are sought to be used as evidence, in order to be bound thereby, must be shown to have in some way acted upon or endorsed them so as to make the statements therein contained his own. (*Razor* v. *Razor*, 149 Ill. 621.) As there is no evidence in this record that the letters introduced in evidence were ever acted upon in any way or their contents in any way approved by the testator during his lifetime, they are without probative force and should not have been permitted to be introduced in evidence.

No one can read the record now before us without being impressed with the fact that the complainants' counsel tried the case solely upon the theory that the question to be determined by the jury was whether the religion professed and believed by the testator was reasonable and rational. Almost every witness called by the defendants was, upon cross-examination, inquired of by complainants' counsel as to whether he knew the mental condition of the testator upon the subject of spiritualism, and all of the facts developed in the first trial as to the beliefs of the testator with reference to spiritual manifestations, or what he claimed to be spiritual manifestations, which this court then held did not tend even to show incapacity on the part of the testator to make a will, were again submitted in proof to the jury, and numerous of the witnesses called by complainants testified that while the testator was mentally sound upon most subjects he was insane on the subject of spiritualism; and counsel for the complainants, in the argument of the case before the jury, after referring to certain facts stated by the witnesses which the testator claimed to have been spiritual manifestations and which this court held did not tend to establish insanity or an insane delusion, stated that he did not care what the Supreme Court of the State of Illinois or the Supreme Court of the United States might

say, he believed the testator was insane; and again other counsel, after referring to certain facts in evidence which this court held was not evidence of mental incapacity to make a will, stated that those facts disclosed a disordered mind and showed the testator was insane. It is needless for this court to say that such a course of procedure was improper and had a tendency to mislead the jury and cause them to return a verdict against the validity of the will contrary to the evidence and the law and solely upon the ground that the religious beliefs of the testator were irrational.

We have gone through this record with much care and are unable to discover therein any evidence to support the verdict of the jury or the decree of the circuit court. The testator at the time of his death was seventy-three years old. During his lifetime he had accumulated an estate by economy and industry estimated to be of the value of $250,000. Throughout his business life he had been engaged in farming and in banking, and he seems to have had the confidence and esteem of the entire community in which he lived. After his death eighty-seven of the men and women who had known him intimately for many years testified that he was a man of strong mentality, and that he was fully competent, up to the time of his death, (which was some four years subsequent to the making of the will,) to, and did, transact all kinds of business such as was necessary in the management of his estate, and while, as it was said in the former case, the testator was an ultraist regarding all the doctrines embraced in the articles of faith of the spiritualist association, there was no evidence in this record of insanity or insane delusions which cannot be reasonably accounted for by reason of the testator's belief in the doctrine of spiritualism, and, as we there held, under the law of this State every person of the requisite age, being of sound mind and memory, has the power to make a will, and when the validity of the will is challenged upon the ground that the tes-

tator did not possess the requisite testamentary capacity, the ultimate and final question is, did the testator, at the time when the instrument was executed, possess the sound mind and memory required by section 1 of our Statute of Wills? The evidence in this case clearly shows that James T. Crumbaugh, at the time he made his will, did possess such requisite mental capacity, and that fact clearly appearing, it is the duty of this court to sustain his will, whether or not the court agrees with the wisdom of its provisions. We are therefore clearly of the opinion that the trial court should have directed a verdict at the close of all the evidence, upon the motion of the defendants, and for a failure so to do that the decree of that court should be reversed.

This case has been submitted to two juries, and all the evidence which either of the parties to this litigation has been able to discover and bring forward, or can reasonably be expected to discover and bring forward upon another trial, is found in the record now before us. We are therefore satisfied that nothing will be gained by protracting this litigation and by submitting this case to another jury, as it is evident if a jury should again return a verdict against the validity of the will that the court would be bound to set the verdict aside. We therefore think it to the interest of all the parties that this case should not be remanded for a new trial.

The decree of the circuit court will therefore be reversed but the cause will not be remanded, the result of which will be to leave the judgment of the county court of McLean county admitting the will of James T. Crumbaugh, deceased, to probate, in full force and effect.

*Decree reversed.*