BELLE KINKAID, Plaintiff in Error, *vs.* WILLIAM L. KINKAID, Defendant in Error.

*Opinion filed December 17, 1912.*

1. DIVORCE—*a complainant must prove alleged impotency.* A complainant who seeks a divorce upon the ground of impotency has the burden of proving that such impotency existed at the time of the marriage and that it is incurable.

2. APPEALS AND ERRORS—*when appellate tribunal may reverse without remanding.* The right of trial by jury, as enjoyed at the time of the adoption of the constitution, is subject to the power of an appellate tribunal to reverse a judgment for the plaintiff without remanding the cause, where it clearly appears, as a question of law, that there can be no recovery which could be permitted to stand.

3. SAME—*when the Appellate Court cannot reverse without remanding.* The mere fact that the trial court might have directed a verdict for the plaintiff does not empower the Appellate Court to reverse a judgment for the defendant and enter a judgment for the plaintiff's damages and costs, as such course would deprive the defendant of the right to have the Supreme Court review the question of law presented by the giving of a peremptory instruction for the plaintiff; and this rule should apply in divorce proceedings unless the facts would justify the Supreme Court in reaching the conclusion that another trial would have no different result. (*Lindsay* v. *Lindsay,* 226 Ill. 309, explained.)

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Warren county; the Hon. ROBERT J. GRIER, Judge, presiding.

R. C. HUNT, and D. C. MILLER, for plaintiff in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a bill for divorce, brought in the circuit court of Warren county by plaintiff in error against defendant in error. The jury found for the plaintiff in error and a decree of divorce was entered accordingly. On appeal to the Appellate Court that decree was reversed, and the case has been brought here for review by writ of *certiorari.*

The parties to this proceeding were married December 12, 1900, and went to live on a farm of defendant in error, in Warren county. The defendant in error was then forty-one years of age and his wife thirty-eight. Previous to the marriage she had been employed by Kinkaid's mother as a domestic. She testified that she had previously been married and had four children by her former husband, but obtained a divorce from him for cruelty. Plaintiff in error and Kinkaid lived together about two years, when she left him, but soon returned and lived with him for about three years and a half more. She then left him and apparently sued for divorce and was defeated. There is no record, however, of these former divorce proceedings and no evidence as to the grounds upon which they were brought. She testified that she then asked to live with him again and he refused to let her do so.

The charge in this bill is impotency. Plaintiff in error testified that defendant in error did not sleep with her after they were married; that she slept alone the first three nights, and one of her daughters, who was unmarried and lived with them, slept with her the fourth night and for several months thereafter; that he said to her he was not right and had lost his manhood and could not be cured; that he did not have intercourse with her at any time; that he asked the daughter to leave because he could not stand to have women around; that on one occasion, the next day after they were married, he laid down on a rug and afterward jumped up and began to curse and swear, and said that he was a ruined man and could not live that way, and

took his revolver and went down the road; that the same evening, about six o'clock, she asked him where he had been, and he said over to the old man's, in the woods, to cool off; that he acted that way once or twice a week; that he said that when he had those spells he was liable to go crazy and kill her; that he would often lie down on the floor and cry, and would get up from bed about twelve or one o'clock at night and go out of doors in every kind of weather; that he took medicine which he claimed he obtained from a Dr. Pierce, of Buffalo. Plaintiff in error's daughter, Sylvia Martin, (who had married previous to the trial,) testified that her mother and step-father did not sleep together; that he told her she could sleep with her mother, because he never intended to. She also corroborated her mother's testimony as to the incident of his lying down on the rug and jumping up and saying he was a ruined man, and testified that he would push her mother away if she came near him. The other daughter, Gertrude Bencher, testified that she had visited her mother about twice each year for a week at a time, and that Kinkaid and his wife occupied different beds; that once when they were at her home, visiting, she went to their room and saw a partition of bed-clothing between them; that she had seen him push her mother away from him. Sylvia Martin's husband testified that when plaintiff in error left her husband the first time, defendant in error came to his home, where his wife was staying, and wanted to see her privately, and when refused permission to do so went off, "snorting and coughing," fell in the buggy and laid there about two hours.

Two doctors testified for plaintiff in error in answer to hypothetical questions embodying much of the foregoing testimony, and gave it as their opinion that the defendant in error was impotent,—one characterizing the trouble as hysterical and stating that it was incurable, and the other stating that he did not have a positive opinion as to whether

it was curable. On behalf of the defendant in error two doctors testified that they had examined him,—one on the morning of the trial and the other a few days previous,— and found his genital organs normal and that he appeared to be properly nourished.

Defendant in error himself testified that the first night after they were married there was a charivari party, the people staying until about twelve o'clock, and that after they left he and his wife went to bed together, and that he slept with her most of the time after that while she lived with him. He testified that they lived together five years and seven months and had sexual intercourse quite frequently, and that he never refused to have intercourse with her; that he did not take medicine from Dr. Pierce for sexual trouble; that he did not tell his wife or daughter he was a ruined man and could not be cured, and that there was no partition of bed-clothing, as claimed. He testified that his wife was weakly, having had female trouble; that he talked with her about having children and she refused to have any; that his sexual powers were all right. Plaintiff in error admitted that she had had female trouble and that she had been sick at different times.

To obtain a divorce on the ground of impotency it must be shown that the defect existed at the time of the marriage and that it is incurable. (*Griffeth* v. *Griffeth,* 162 Ill. 368; 1 Bishop on Marriage, Divorce and Separation, sec. 786.) The burden of proof is upon plaintiff in error to establish these facts. *Lorenz* v. *Lorenz,* 93 Ill. 376; 2 Bishop on Marriage, Divorce and Separation, sec. 1316.

The evidence was sharply conflicting on the chief question at issue in this case but need not be considered here, as this case must be disposed of on other grounds. The right of a trial by jury, as enjoyed prior to the adoption of the constitution, is subject to the power of a court of review to reverse a judgment for the plaintiff without remanding the cause, in cases where it clearly appears, as a

question of law, that in the end there can be no recovery which could be permitted to stand. But the fact that the trial court might have directed a verdict for the plaintiff does not empower the Appellate Court to reverse a judgment for defendant and enter a judgment for the plaintiff's damages and costs, as such course would deprive the defendant of his right to have the Supreme Court review the question of law presented by the giving of a peremptory instruction for the plaintiff. (*City of Spring Valley* v. *Coal Co.* 173 Ill. 497.) This general rule laid down in the case just cited should apply in divorce proceedings unless the facts would justify this court in reaching the same conclusion as to the result of another jury trial as was reached in *Lindsay* v. *Lindsay,* 226 Ill. 309. In that case there had been two trials with the same result, and this court thought another trial would not have a different result than the other two,—that no new evidence could be introduced that would throw any new light upon the question to be decided,—and held that the ends of justice would not be served by remanding the case for another trial, the result of which would be certain. This case does not present a similar situation. The first trial in the court below resulted in favor of defendant in error, the second trial in favor of plaintiff in error. Under the rule laid down by this court in *Lindsay* v. *Lindsay, supra,* and *Crumbaugh* v. *Owen,* 238 Ill. 497, on the facts in this case we are of the opinion that the Appellate Court should not have simply reversed the cause, but should have also remanded it to the circuit court for another trial.

The judgment of the Appellate Court reversing, annulling and setting aside the decree of the circuit court will be reversed and the cause remanded to that court, with directions either to affirm the decree, or, if it be of the opinion the decree should be reversed, to reverse the decree and remand the cause to the circuit court for another trial.

*Reversed and remanded, with directions.*