## Wilson v. Wilson

*Blumberg & Sork*, for libellant.

*C. Harry Ditter*, for respondent.

FINLETTER, P. J., July 16, 1936.—The husband seeks a divorce on the ground of his wife's impotence. It appears that prior to the marriage the respondent underwent a surgical operation in which the uterus, Fallopian tubes and ovaries were removed, so that she is incapable of procreation. She is however entirely capable of performing vera copula, and it is a fact that for over two years after the libellant discovered her condition they frequently performed the sexual act. There is a conflict of testimony regarding the libellant's knowledge of his wife's condition prior to the marriage and there is evidence to show that the libellant's reason for leaving her was a series of unhappy quarrels resulting from the respondent's jealousy, but in the view we have taken of the case there is no need

to discuss these subjects, because, first, the conceded facts do not show impotence, as that subject is understood in all jurisdictions which make it a ground of divorce, and, secondly, because The Divorce Law of May 2, 1929, P. L. 1237, section 10, 1(a), contemplates cases in which the respondent is "naturally" impotent.

Mr. Bishop discusses the subject in his work on Marriage, Divorce & Separation (ed. 1891) vol. 1, pp. 328, 329, and concludes in sec. 768, page 329, that:

"In common-law countries, the marriage will be good if there is an adequate power of mere copula, though impregnation should be impossible. . . . Upon this view of the law the English and American cases all appear to proceed".

Inability to beget or bear children, if associated with complete power of copulation, is not a ground for annulling a marriage. If the wife is capable of vera copula and natural coitus, the absence of procreative or conceptive power is not a ground for a decree of nullity. Barrenness in no sense is the synonym of impotency, and the removal of the genital organs does not render a wife incapable of entering into the married state: 9 R. C. L. 280, sec. 41; 19 C. J., pp. 40, 41, sec. 71; Anonymous, 89 Ala. 291; Payne v. Payne, 46 Minn. 467; Devanbagh v. Devanbagh, 5 Paige 554, 557; and 28 Am. Dec. 446, et seq.

The Divorce Law of May 2, 1929, P. L. 1237, provides, in section 10, that ". . . it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged . . . that the other spouse:

"(a) At the time of the contract, was and still is naturally and incurably impotent, or incapable of procreation".

Whether this phrase alters the existing law and creates two kinds of impotence, the one, impotence in the sense it is used at common law, and the other, "incapable of procreation," or whether, on the other hand, the latter part of the phrase is explanatory or epexegetical of the

first words, we do not need to decide, because we think the word "naturally" applies to both and limits the whole phrase.

What is meant then by naturally? Does it include a case where the impotence is the result of a surgical operation?

The word is so simple that little need or can be said about the legislative intent when they used it. It means impotent by nature, not by art, accident or design that has interfered with the course of nature. It is defined in the Century Dictionary as: "By nature . . . without art or cultivation."

In Grosvenor v. Grosvenor, 194 Ill. App. 652, and Griffeth v. Griffeth, 162 Ill. 368, however, it was suggested that what was meant was inability to act in a natural manner, that is, inability to perform what was the natural act under certain circumstances. These cases also held that "naturally" meant "incurably."

Both of these interpretations seem to us to be strained and artificial. The cases were very hard ones to the libellant. Perhaps this had its effect. But it does seem to be stretching interpretation to the breaking point to say that "naturally" means "incurably." It would be particularly hard for a Pennsylvania court to do so because, while the Illinois statute used only the word "naturally", the Pennsylvania statute uses both words. We cannot, therefore, without violating every canon of construction hold that both words convey the same idea.

If the legislative purpose was to give as a cause of divorce any incurable disability, however arising, the idea would have been complete if "naturally" had been omitted altogether.

One of the Illinois cases cites A. C. v. B. C., 10 W. N. C. 569, in which it was said by Judge Ewing, construing the then Pennsylvania statute, the Act of March 13, 1815, 6 Sm. L. 286, where the words were "was and still is naturally impotent", . . . said: "Taken literally the word 'naturally' would exclude an impotency caused by an in-

jury after birth. Yet it certainly does not exclude such a case." Unfortunately this was all the learned judge said before going on to decide the only question before him, i.e., whether or not the defect must be pleaded as incurable. The meaning of "natural" was not discussed or raised in the case.

We are aware that one of the most important ends of marriage is defeated if natural incapacity only is made the ground of divorce. But if the legislature has so provided the remedy is to repeal the act. We are not to decide what the legislature ought to have provided, but to interpret what it has said. The best way to bring about a repeal of an obnoxious statute is to enforce it.

For these reasons we dismiss the libel.